[No. B203392. Second Dist., Div. Seven. Dec. 15, 2008.]

FABIAN LUNA, a Minor, etc., et al., Plaintiffs and Appellants, v. EDILBERTO VELA, Defendant and Respondent.

104

---

## COUNSEL

Blumberg Law Corporation, Ave Buchwald and John P. Blumberg for Plaintiffs and Appellants.

Pollak, Vida & Fisher, Michael M. Pollak, Daniel P. Barer; Law Offices of Roger A. Koll and Russell P. McQuown for Defendant and Respondent.

---

Oᴘɪɴɪᴏɴ

**PERLUSS, P. J.**—Fabian Luna, through his guardian ad litem, appeals from the judgment entered after the trial court granted summary judgment in favor of Edilberto Vela in Luna's action for personal injuries suffered when Luna tripped over a net line and fractured his elbow while participating in a recreational volleyball game in Vela's front yard. Luna contends the trial court improperly applied the doctrine of primary assumption of the risk to bar his recovery. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

### 1. *The Accident*

Thirteen-year-old Luna was invited to join Vela's summer evening game of volleyball in July 2004. Vela had created a volleyball court in his front yard, using a volleyball set he had purchased consisting of a net, net poles, tie lines to hold up the poles and yellow stakes to secure the tie lines in the ground; he set up the equipment for family and friends who were at his house that evening.[1] Luna, who lived with his family across the street from Vela, joined the game approximately 45 minutes after it started.[2]

About 10 minutes after play had resumed, a ball was hit out of bounds and into the street. (The sidewalk was being used as one of the out-of-bounds lines for the front yard court.) Luna went to retrieve the ball, tripped on one of the lines used to support the poles for the volleyball net and fell, hitting his arm on the street and fracturing his right elbow. The tie line, which was the same color and made from the same material as the volleyball net itself, was stretched across the sidewalk and anchored by one of the yellow stakes next to a tree in the narrow grass parkway between the sidewalk and the street. According to Luna's father, William Luna, when Vela told him his son had been injured, Vela said he had tripped on the "invisible string" used to hold up the volleyball net. The tie line is elsewhere described as a "thin pinkish colored string or wire."

### 2. *Luna's Complaint and Vela's Motion for Summary Judgment*

Luna filed an unverified form complaint for personal injuries against Vela, alleging causes of action for general negligence and premises liability and seeking hospital and medical expenses, future medical expenses and general

---

[1] Vela testified he had played about eight hours of volleyball using the set before the evening of Luna's accident. No one had previously been injured.

[2] Although he had seen others play volleyball in the past, Luna testified he had never participated in a volleyball game before this evening.

damages "according to proof." Vela answered with a general denial and asserted 12 affirmative defenses, including assumption of the risk.

Following discovery, including the deposition of Luna, Vela moved for summary judgment on the ground any recovery was barred by the doctrine of primary assumption of the risk. Vela argued being injured by tripping over a volleyball net pole line is a risk inherent in a front yard volleyball game. Luna opposed the motion, contending Vela had unreasonably increased the risk of injury inherent in the sport by his negligent placement of the net pole lines and by his use of nearly invisible string or wire, unmarked by flags or distinctive coloring, to secure the net poles. Luna disputed, among other things, that photographs submitted by Vela in support of the motion accurately depicted the net and supporting lines as assembled on the date of the accident: The photographs show the line attached to a stake on Vela's front yard just inside the sidewalk; Luna's father testified the line stretched across the sidewalk and was anchored in the parkway next to a tree.

### 3. *The Trial Court's Order Granting Summary Judgment*

The trial court granted the motion. Citing to and quoting from the Supreme Court's landmark decision in *Knight v. Jewett* (1992) 3 Cal.4th 296 [11 Cal.Rptr.2d 2, 834 P.2d 696] (*Knight*) and several Court of Appeal decisions, the court ruled Luna's action was barred by the doctrine of primary assumption of the risk: "Generally, a defendant has no duty to protect a plaintiff against risks inherent in the sport, but [does] have a duty to use care not to increase the risks to a participant over and above those which are inherent in the sport. . . . [¶] Here, plaintiff's theory is that defendant's placement of the net increased the risk of the informal volleyball game. In opposition [to] the motion, he proffers evidence which would create a triable issue of material fact with respect to the question of whether defendant negligently placed the tie lines for the net. . . . [¶] Taking into account the dispute as to where the tie lines were placed, the court must look to the nature of the sport in question and the parties' relationship to the activity to determine whether defendant's conduct increased the risks. [Citation.] That determination is a question of law. [Citation.] [¶] From the evidence presented, the Court finds that even taking plaintiff's version of the events as true, defendant did nothing to increase the risks inherent in an informal volleyball game. The net was set up in defendant's front yard and the location at which to place net poles and tie ropes was limited. Even if one could find negligence in defendant's placement of the tie ropes, attaching liability would chill the participation in common, casual recreational activities. [Citation.] Plaintiff failed to proffer any evidence to support his argument that defendant increased the inherent

risk of volleyball, which includes tripping over the structures necessary to hold up the net."

## DISCUSSION

### 1. *Standard of Review*

■ We review a grant of summary judgment de novo and decide independently whether the facts not subject to triable dispute warrant judgment for the moving party as a matter of law. (*Kahn v. East Side Union High School Dist.* (2003) 31 Cal.4th 990, 1003 [4 Cal.Rptr.3d 103, 75 P.3d 30] (*Kahn*); *Intel Corp. v. Hamidi* (2003) 30 Cal.4th 1342, 1348 [1 Cal.Rptr.3d 32, 71 P.3d 296].) Application of the primary assumption of the risk doctrine involves "a *legal* determination that the defendant did not owe a duty to protect the plaintiff from the particular risk of harm involved in the claim." (*Kahn*, at p. 1003.)

### 2. Knight *and Its Progeny and the Principles Governing the Doctrine of Primary Assumption of the Risk*

■ In *Knight, supra*, 3 Cal.4th 296, in a plurality decision written by Chief Justice George and subsequently accepted by all members of the court except Justice Kennard (see, e.g., *Shin v. Ahn* (2007) 42 Cal.4th 482, 491 [64 Cal.Rptr.3d 803, 165 P.3d 581]; *id.* at pp. 500–501 (conc. & dis. opn. of Kennard, J.)), the Supreme Court explained in a sports setting, under the primary assumption of the risk doctrine, the plaintiff is said to have assumed the particular risks inherent in a sport by choosing to participate and the defendant generally owes no duty to protect the plaintiff from those risks. "[A] court need not ask what risks a particular plaintiff subjectively knew of and chose to encounter, but instead must evaluate the fundamental nature of the sport and the defendant's role in or relationship to that sport in order to determine whether the defendant owes a duty to protect a plaintiff from the particular risk of harm." (*Avila v. Citrus Community College Dist.* (2006) 38 Cal.4th 148, 161 [41 Cal.Rptr.3d 299, 131 P.3d 383] (*Avila*).)

As applied to the potential liability of sports participants themselves, careless conduct alone is not enough; a participant owes no duty to protect a coparticipant from particular harms arising from ordinary or simple negligence. (*Knight, supra*, 3 Cal.4th at pp. 308–309; *Avila, supra*, 38 Cal.4th at p. 161.) Rather, "coparticipants' limited duty of care is to refrain from intentionally injuring one another or engaging in conduct that is 'so reckless as to be totally outside the range of the ordinary activity involved in the

sport.' " (*Shin v. Ahn, supra,* 42 Cal.4th at pp. 489–490.) This limited duty analysis grounded in the primary assumption of the risk doctrine applies to a wide variety of active sports—for example, touch football (*Knight,* at p. 320); skiing (*Cheong v. Antablin* (1997) 16 Cal.4th 1063, 1067–1068 [68 Cal.Rptr.2d 859, 946 P.2d 817]); competitive swimming (*Kahn, supra,* 31 Cal.4th at p. 996); and baseball (*Avila,* at p. 161)—as well as less active, noncontact sports such as golf (*Shin,* at p. 497).[3]

■ Although acknowledging that one generally owes a duty of ordinary care not to cause an unreasonable risk of harm to others, in these sports liability cases the Supreme Court has held the policy considerations involved in determining the existence and scope of a defendant's duty necessarily become intertwined with an evaluation of the nature of the activity involved and the relationship of the parties to that activity. (See, e.g., *Knight, supra,* 3 Cal.4th at pp. 315–316; *Kahn, supra,* 31 Cal.4th at p. 1004; *Shin v. Ahn, supra,* 42 Cal.4th at pp. 488–499.) Central to the court's evaluation of duty is avoiding rules of liability that will alter the fundamental nature of the sport or chill the fervor of athletic competition. "[A]s a matter of policy, it would not be appropriate to recognize a duty of care when to do so would require that an integral part of the sport be abandoned, or would discourage vigorous participation in sporting events. Accordingly, defendants generally do not have a duty to protect the plaintiff from the risks inherent in the sport, or to eliminate risk from the sport, although they generally do have a duty not to increase the risk of harm beyond what is inherent in the sport." (*Kahn, supra,* 31 Cal.4th at p. 1004; accord, *Shin,* at p. 489 [In *Knight* the Supreme Court "stressed the chilling effect that would flow from imposing liability on touch football players for ordinary careless conduct. '[E]ven when a participant's conduct violates a rule of the game and may subject the violator to internal sanctions prescribed by the sport itself, imposition of legal liability for such conduct might well alter fundamentally the nature of the sport by deterring participants from vigorously engaging in activity . . . .' "]; *Cheong v. Antablin, supra,* 16 Cal.4th at pp. 1071–1072 [" '[b]y eliminating liability for unintended accidents, the doctrine [of primary assumption of the risk] ensures that the fervor of athletic competition will not be chilled by the constant threat of litigation from every misstep, sharp turn and sudden stop' "].)

---

[3] "Secondary assumption of the risk," in contrast to primary assumption of the risk, "arises when the defendant still owes a duty of care, but the plaintiff knowingly encounters the risks attendant on the defendant's breach of duty." (*Avila, supra,* 38 Cal.4th at p. 161, fn. 6; see *Knight, supra,* 3 Cal.4th at p. 308.) Secondary assumption of the risk relates to the allocation of damages, not the question of duty, and thus is simply an aspect of the principles of comparative fault first articulated in *Li v. Yellow Cab Co.* (1975) 13 Cal.3d 804 [119 Cal.Rptr. 858, 532 P.2d 1226]. (See *Shin v. Ahn, supra,* 42 Cal.4th at pp. 498–499.)

■     The Supreme Court, however, has repeatedly emphasized the question of duty in the sports context depends not only on the nature of the activity but also on the " 'role of the defendant whose conduct is at issue in a given case.' " (*Kahn, supra*, 31 Cal.4th at p. 1004, quoting *Knight, supra*, 3 Cal.4th at p. 318.) "Duties with respect to the same risk may vary according to the *role* played by particular defendants involved in the sport." (*Kahn*, at p. 1004; see *Avila, supra*, 38 Cal.4th at p. 162 ["we also have noted in dicta that those responsible for maintaining athletic facilities have a similar duty not to increase the inherent risks, albeit in the context of businesses selling recreational opportunities . . ."].) As an example of this distinction, the court, first in *Knight* and then again in *Kahn*, has explained a batter in baseball has no duty to avoid carelessly throwing a bat after hitting the ball—such conduct being an inherent risk of the sport—but "a stadium owner, because of his or her different relationship to the sport, may have a duty to take reasonable measures to protect spectators from carelessly thrown bats. For the stadium owner, reasonable steps may minimize the risk without altering the nature of the sport." (*Kahn*, at p. 1004; see *Knight*, at p. 317; see also *Shin v. Ahn, supra*, 42 Cal.4th at pp. 489–490.)

The significance of the defendant's role in the sporting activity—that is, whether the defendant is an organizer of the activity or someone who has provided or maintained the facilities and equipment used, rather than simply a coparticipant—has been illustrated in a number of Court of Appeal decisions applying the primary assumption of the risk doctrine. Thus, in *Morgan v. Fuji Country USA, Inc.* (1995) 34 Cal.App.4th 127 [40 Cal.Rptr.2d 249] the court reversed summary judgment in favor of a golf course owner, concluding, even if being struck by a misguided golf ball is an inherent risk of the sport, the defendant had a duty to design its course, for example by the way the tees, fairways and greens are aligned or separated, so that it did not increase this risk of harm. (*Id.* at p. 132.) "[I]f the relationship between the parties was one of coparticipants, i.e., if the defendant here were the golfer who hit the errant ball . . . the defendant would have no liability towards Morgan because there is an inherent risk that the defendant would hit an errant ball. Morgan, however, is not suing the other player; he is suing the owner and operator of the golf course. [¶] Fuji, as owner and operator of the Castle Creek golf course owes a different duty to Morgan and other golfers." (*Id.* at p. 134.)

Similarly, in *Solis v. Kirkwood Resort Co.* (2001) 94 Cal.App.4th 354 [114 Cal.Rptr.2d 265], the Third District reversed the trial court's order granting summary judgment in favor of the defendant ski resort in a personal injury lawsuit brought by a skier who alleged, while skiing, and without warning, he entered an area of the resort that had recently been altered to accommodate a ski race and contained hazardous man-made jumps that increased the risk of

harm to skiers and caused him to fall and injure himself. (*Id.* at p. 358.) The Court of Appeal agreed with the trial court that falling is an inherent risk of skiing and a ski resort has no duty to eliminate or mitigate the inherent risks of skiing "lest the thrill of the sport be sapped." (*Id.* at p. 364.) Nonetheless, the court held "a resort cannot increase the risks associated with skiing without incurring a duty of care toward its patrons." (*Ibid.*)

Applying the same fundamental primary assumption of the risk analysis, the court in *Saffro v. Elite Racing, Inc.* (2002) 98 Cal.App.4th 173, 175, 179 [119 Cal.Rptr.2d 497], reversed summary judgment in favor of the organizer of a marathon race, holding the organizer owed a duty to participants to arrange and conduct a reasonably safe event by providing sufficient water and electrolyte replacement drinks, which " 'minimize[d] the risks without altering the nature of the sport.' " Other courts have likewise reversed summary judgments on the ground owners and operators of sports facilities, as well as providers of sports-related services and materials, owe a duty of care to participants not to design or operate sports facilities or provide services in a manner that increases the risk of harm to them beyond that inherent in the sport. (See, e.g., *Giardino v. Brown* (2002) 98 Cal.App.4th 820, 834 [120 Cal.Rptr.2d 77] [provider of horses to children's camp had a duty to at least not knowingly or without due care provide horses inappropriate for beginning riders]; *Van Dyke v. S.K.I. Ltd.* (1998) 67 Cal.App.4th 1310, 1317 [79 Cal.Rptr.2d 775] [reversing grant of summary judgment in favor of ski resort owner; "when a ski area puts signs in a ski run . . . it has a duty to mark the signs so they are plainly visible from all angles to skiers who are skiing on the run"]; *Branco v. Kearny Moto Park, Inc.* (1995) 37 Cal.App.4th 184, 193 [43 Cal.Rptr.2d 392] [motocross operator owed duty to bicycle racer not to design jumps in such a way as to create an extreme risk of injury; such dangerously designed jumps are not inherently required in the sport].)

3. *The Trial Court Erred in Concluding As a Matter of Law Vela's Arguably Negligent Use and Placement of "Nearly Invisible" Net Pole Lines Did Not Increase the Risks Inherent in Playing Volleyball*

■ We do not doubt tripping over a tie line used to secure the net poles while retrieving a ball hit out of bounds is a risk inherent in a front yard volleyball game. The possibility of such an accident, as Vela argues and the trial court ruled in granting summary judgment, if not common knowledge, would at least seem to be a matter of common sense. (Compare *Staten v. Superior Court* (1996) 45 Cal.App.4th 1628, 1635 [53 Cal.Rptr.2d 657] ["[t]he determinant of duty, 'inherent risk,' is to be decided solely as a question of law and . . . is necessarily reached from the common knowledge of judges, and not the opinions of experts"] and *Towns v. Davidson* (2007) 147

Cal.App.4th 461, 473 [54 Cal.Rptr.3d 568] ["[t]he nature and risks of downhill skiing are commonly understood . . ."] with *Zipusch v. LA Workout, Inc.* (2007) 155 Cal.App.4th 1281, 1292 [66 Cal.Rptr.3d 704] [common sense dictates that negligent inspection and maintenance of exercise equipment is not inherent risk of exercising at health club] and *Yancey v. Superior Court* (1994) 28 Cal.App.4th 558, 566 [33 Cal.Rptr.2d 777] [requiring discus participants to check target area before launching throw is common-sense precaution that will not alter or destroy the inherent nature of the activity itself].)[4] Although a large number of volleyball courts in Southern California—at schools, playgrounds and the beaches—have net poles embedded in the ground, many casual games are played with temporary courts set up for the specific occasion, just as Vela did for his family and friends the evening of Luna's accident.

Notwithstanding our agreement with the trial court that tripping over the net pole tie lines is an inherent risk of volleyball, as discussed, under *Knight* and its progeny Vela had a duty not to increase that particular risk of harm beyond what is inherent in the sport itself. (See, e.g., *Kahn, supra,* 31 Cal.4th at p. 1004; *Knight, supra,* 3 Cal.4th at pp. 315–316.) Thus, the inherent risk in baseball that a pitcher will be hit by a line drive does not preclude a determination that the design and use of a particular type of aluminum bat unreasonably increased the inherent risk of injury to the pitcher (see *Sanchez v. Hillerich & Bradsby Co.* (2002) 104 Cal.App.4th 703, 715 [128 Cal.Rptr.2d 529]); the inherent risk of being hit by a misguided golf shot does not prevent a finding the owner of a golf course unreasonably exposed golfers to that risk by its poor design of the course (see *Morgan v. Fuji Country USA, Inc., supra,* 34 Cal.App.4th at pp. 134–135); and the inherent risk of colliding with obstacles while skiing (for example, a directional signpost on the ski slope) does not mean recovery for all skiing injuries is barred by the doctrine of assumption of the risk notwithstanding evidence that the operator of the ski run increased the risk of harm by placing the signpost where it was virtually

---

[4] The Court of Appeal in *Staten v. Superior Court, supra,* 45 Cal.App.4th 1628, clearly described the difficulty created by the *Knight* court's requirement that the court, as a matter of law, define duty by reference to the nature of the particular sport and the risks inherent in it, even though the sport itself may be little known to the judge hearing the case, in light of the well-established rule, articulated in cases such as *Sheldon Appel Co. v. Albert & Oliker* (1989) 47 Cal.3d 863, 884 [254 Cal.Rptr. 336, 765 P.2d 498], prohibiting expert testimony on the legal question of duty. (See *Staten,* at pp. 1635–1636; see generally Ursin & Carter, *Clarifying Duty: California's No-Duty-for-Sports Regime* (2008) 45 San Diego L.Rev. 383, 431–433.) "Trial courts deciding these questions on summary judgment should not be faced with determining the inherent risks of an unfamiliar sport while bereft of the helpful factual input of experts. We suppose that a trial judge could receive expert evidence on the factual nature of an unknown or esoteric sports activity, but not expert evidence on the ultimate legal question of inherent risk and duty. This, however, is not our call: it is for the Supreme Court, in baseball parlance, to declare this suggestion fair or foul." (*Staten,* at p. 1636.)

invisible to skiers, like the plaintiff, crossing from one trail to another (see *Van Dyke v. S.K.I. Ltd., supra,* 67 Cal.App.4th at pp. 1317–1318).

Luna has alleged Vela's conduct, like that of the defendants in these cases, increased his risk of tripping beyond that inherent in playing volleyball—that Vela substantially caused his injury by his negligent placement of the tie lines and his failure to use flags or otherwise make the support strings more visible. Because Vela moved for summary judgment on the issue of duty, it was his burden to establish not only that tripping over a tie line was an inherent risk of playing a front yard game of volleyball but also that neither his failure to distinctively mark the lines nor his placement of them across the sidewalk increased the risk of harm to the participants. (See, e.g., *Huff v. Wilkins* (2006) 138 Cal.App.4th 732, 740 [41 Cal.Rptr.3d 754] ["when the plaintiff claims the defendant's conduct increased the inherent risks of a sport, summary judgment on primary assumption of risk grounds is unavailable unless the defendant disproves the theory or establishes a lack of causation"]; *Vine v. Bear Valley Ski Co.* (2004) 118 Cal.App.4th 577, 591 [13 Cal.Rptr.3d 370] ["to establish it owed no duty to Vine because she had assumed the risk of injury, Bear Valley had to show either that its jump did not increase the inherent risks of snowboard jumping, or that whatever defects the jump may have had were included in those risks"]; *Distefano v. Forester* (2001) 85 Cal.App.4th 1249, 1262 [102 Cal.Rptr.2d 813] [to establish affirmative defense of primary assumption of the risk on summary judgment, it was moving defendant's burden to establish plaintiff's injuries resulted from risks inherent in recreational activity in which he and plaintiff were participating and he was not recklessly operating his dune buggy].) No such showing was made.

Similarly, Vela has not demonstrated requiring net pole tie lines be placed to reduce the risk of tripping over them or the lines be flagged or brightly colored would fundamentally alter the nature of the sport or deter participants from vigorously engaging in the activity, a showing that, if made, would preclude Luna's claim as a matter of law. (See *Shin v. Ahn, supra,* 42 Cal.4th at p. 489; *Knight, supra,* 3 Cal.4th at pp. 318–319.) Accordingly, the question remains whether Vela breached his duty as the person who set up the front yard volleyball court not to increase the risks inherent in the sport.

Although we recognize the Court of Appeal decisions specifically addressing the point are in conflict, we believe resolving this issue is not a matter of further defining Vela's duty, which would be a question of law for the court. Rather, it requires application of the governing standard of care (the duty not to increase the risks inherent in the sport) to the facts of this particular case—the traditional role of the trier of fact. (See, e.g., *Vine v. Bear Valley Ski Co., supra,* 118 Cal.App.4th at pp. 591–592 [whether defendant's design of

snowboard jump increased inherent risks of snowboarding is question for jury]; *Solis v. Kirkwood Resort Co., supra*, 94 Cal.App.4th at p. 365 [whether artificial jumps built by resort increased inherent risk of falling while skiing is question for jury]; *Lowe v. California League of Prof. Baseball* (1997) 56 Cal.App.4th 112, 123 [65 Cal.Rptr.2d 105] [whether distraction caused by activities of minor league baseball team's mascot increased inherent risk of spectator being hit by a foul ball "is an issue of fact to be resolved at trial"]; but see *Huff v. Wilkins, supra*, 138 Cal.App.4th at p. 745 ["it is the trial court's province to determine whether defendants breached their duty not to increase the inherent risk of a collision [in the sport of off-roading], and it should hold a hearing for this purpose before impaneling a jury"]; *American Golf Corp. v. Superior Court* (2000) 79 Cal.App.4th 30, 37 [93 Cal.Rptr.2d 683] ["[i]t is for the court to decide . . . whether the defendant has increased the risks of the activity beyond the risks inherent in the sport"]; see also *Huffman v. City of Poway* (2000) 84 Cal.App.4th 975, 995, fn. 23 [101 Cal.Rptr.2d 325] [indicating it is for the court to determine whether defendant's conduct increased the risk inherent in participating in a particular sport, but that trial court may receive expert testimony on the customary practices in the sport to make that determination].)

■ Our conclusion it is for the trier of fact to determine whether Vela breached his limited duty not to increase the risks inherent in the sport of volleyball finds solid support in the Supreme Court's most recent sports injury, primary assumption of the risk decision, *Shin v. Ahn, supra*, 42 Cal.4th 482, a case that postdates the appellate court decisions suggesting the issue is one for the court to resolve. In *Shin* the Supreme Court affirmed the trial court's denial of a motion for summary judgment brought by a golfer who had struck one of his own playing partners with a tee shot. The court held the primary assumption of the risk doctrine regulates the duty a golfer owes both to playing partners and to other golfers on the course, found being hit by a stray golf shot was an inherent risk of the sport and concluded "golfers have a limited duty of care to other players, breached only if they intentionally injure them or engage in conduct that is 'so reckless as to be totally outside the range of the ordinary activity involved in the sport.' " (*Id.* at p. 497.) However, the court also held whether the defendant had breached that limited duty of care by engaging in reckless conduct was a question for the trier of fact: "In determining whether defendant acted recklessly, the trier of fact will have to consider both the nature of the game and the totality of circumstances surrounding the shot. . . . [¶] Many factors will bear on whether a golfer's conduct was reasonable, negligent, or reckless. . . . [¶] . . . This record is simply too sparse to support a finding, as a matter of law, that defendant did, or did not, act recklessly. This will be a question the jury will ultimately resolve based on a more complete examination of the facts." (*Id.* at pp. 499–500.)

Although the nature of the limited duties differs, the question whether a defendant golfer's conduct violated a sports participant's limited duty of care to a coparticipant is not fundamentally different from the question whether a defendant homeowner who set up an informal recreational volleyball court violated his limited duty of care to the game's participants. In either case, on a sufficient record summary judgment may be proper. (See *Shin v. Ahn, supra,* 42 Cal.4th at p. 500 ["We do not suggest that cases like this can never be resolved on summary judgment, only that this record is insufficient to do so."].) In both cases, however, if triable issues of material fact exist on the question of breach of that limited duty, the matter should be resolved by the trier of fact, not the court as a matter of law.

### 4. *Vela's Summary Judgment Motion Did Not Argue He Had Exercised Due Care or Luna's Injury Was Not Proximately Caused by His Alleged Breach of Duty*

At various points in his brief on appeal Vela suggests summary judgment was properly granted in his favor because the unmarked net pole lines were part of an equipment set he had purchased from a store or because Luna presented no evidence that the visibility of the tie line played any role in the accident. The first argument—that Vela acted reasonably in using the thin, pinkish-colored string or wire to support the net poles—challenges Luna's allegation that Vela was negligent and breached his duty to use due care not to increase the risks inherent in a front yard volleyball game. The second argument—that Luna was focused on the ball when he tripped and would not have seen the tie line even if it had been brightly colored or marked with flags—contests Luna's allegation of causation.

To prevail at trial, of course, Luna will need to prove both breach of duty and causation, as well as his damages. (See, e.g., *Ortega v. Kmart Corp.* (2001) 26 Cal.4th 1200, 1205 [114 Cal.Rptr.2d 470, 36 P.3d 11] [elements of negligence cause of action are duty, breach of duty, proximate cause and damages].)[5] It is possible the trial court in this case, presented with a properly supported summary judgment motion, could determine based on undisputed facts that Vela exercised reasonable care in securing the volleyball net poles with the tie lines from the equipment set he had purchased and in his placement of the stakes and tie lines or that, even if negligent, Vela's conduct was not a substantial factor in causing Luna's injury. If so, summary judgment on either or both of those grounds would be appropriate. However, Vela's motion was based solely on the issue of duty and primary assumption of the risk. That motion should have been denied.

---

[5] At trial the jury should be instructed Vela owed Luna no duty to protect him from the risks inherent in playing volleyball. (See *Vine v. Bear Valley Ski Co., supra,* 118 Cal.App.4th at p. 596.)

## DISPOSITION

The judgment is reversed, and the cause remanded for further proceedings not inconsistent with this opinion. Luna is to recover his costs on appeal.

Woods, J., and Jackson, J., concurred.