PER CURIAM.
 

 In this workers’ compensation appeal, Claimant seeks review of an order of the Judge of Compensation Claims (JCC) that denies authorization of a cervical spine fusion. We reverse and remand for entry of an order authorizing the surgery because all of the medical evidence established that the need for the surgery was brought about solely by occupational injuries and, thus, the JCC erred in applying the major contributing cause standard in section 440.09(l)(b), Florida Statutes (2006), to deny the surgery.
 

 Claimant, while working as a delivery driver for the Employer, suffered a com-pensable accident and injury in 2005, resulting in an authorized cervical diskecto-my and fusion at the C5-6 level performed by Dr. Glasser, a neurosurgeon. This surgery necessitated the implantation of a fixation plate. Following this surgery, Claimant had “excellent” results and returned to full-duty work for the Employer. According to Dr. Glasser, Claimant neither required nor received any medical treatment for the injuries suffered in the 2005 accident subsequent to October 23, 2005, the date he reached maximum medical improvement (MMI) from the 2005 accident.
 

 On February 21, 2007, while working on a loading dock, Claimant injured his right shoulder and reinjured his neck, when a chain he was pulling snapped. Approximately one hour later, Claimant lifted a ninety-pound package and felt immediate and severe pain in his neck and right shoulder. The Employer and its workers’ compensation carrier (E/C) again authorized medical treatment with Dr. Glasser, who diagnosed cervical strain and radiculi-tis.
 

 Dr. Glasser initially referred Claimant to a shoulder specialist, who performed an authorized partial shoulder replacement in 2007. In 2008, the shoulder specialist re
 
 *330
 
 ferred Claimant back to Dr. Glasser because of Claimant’s persistent complaints of pain in the cervical region. Dr. Glasser then diagnosed a disc osteophyte complex and degenerative changes at C6-7, with mild collapse of both neural foramina. Dr. Glasser recommended a cervical fusion at C6-7 (a level below the previous fusion) and plate removal at C5-6 (the plate implanted in the 2005 procedure). Dr. Glas-ser ultimately opined that the 2007 work accident was the major contributing cause of the medical condition warranting surgery and that Claimant did not require further treatment for the injuries resulting from his 2005 accident until the need was brought about by his 2007 accident.
 

 Claimant filed a petition for benefits for authorization of the surgery recommended by Dr. Glasser, which the E/C denied. The E/C obtained an independent medical examination with Dr. Cassidy, who opined that, although the surgery recommended by Dr. Glasser was medically necessary, the need for the surgery was a result of degenerative changes, not the 2007 accident. However, Dr. Glasser acknowledged that the degenerative changes were likely related to the prior fusion.
 

 Based on an unopposed motion filed by the E/C, the JCC appointed an expert medical advisor (EMA) pursuant to section 440.13(9)(c) to resolve the perceived conflict between the opinions of Dr. Glasser and Dr. Cassidy. The JCC asked the EMA to answer the following question: “What is the major contributing cause of the claimant’s need for C6-7 partial cor-pectomy, fusion, and plate with removal of the C5-6 plate surgery?” In his report, the EMA stated that Claimant’s degenerative disc disease was the major contributing cause of Claimant’s need for the fusion.
 

 At trial, the EMA clarified this statement, and testified that, although the injuries suffered as a result of the 2007 accident contributed to Claimant’s need for surgery, the 2005 fusion likely caused the significant degenerative process necessitating the surgery (because of increased stress caused by the fixed nature of the fusion), and was, thus, the major contributing cause of the “need” for surgery. The EMA also testified that although Claimant likely had some degenerative disc disease even prior to the 2005 accident (which the EMA stated could not properly be classified as a preexisting injury or anomaly because of its commonness and asymptomatic nature), this degenerative condition was neither the major nor a minor cause of “the need for surgery.” In conclusion, the EMA testified the injuries caused by the 2007 accident combined with the 2005 “problems” to cause the need for the surgery in question, and he could not say that Claimant would have required the surgery in question, absent the occurrence of the 2007 accident and resulting injuries.
 

 In the merits order, the JCC denied the surgery. The JCC found, based on the EMA’s testimony, that Claimant had degenerative disc disease which predated both accidents and had continued to progress causing the need for the surgery, and thus, the major contributing cause of Claimant’s need for surgery was
 
 not
 
 the 2007 accident. The JCC rejected Claimant’s argument that the major contributing cause standard did not apply because the only causes contributing to the need for surgery were occupational in nature. This was error.
 

 This case illustrates the complex nature of Florida’s current Workers’ Compensation Law, and the myriad of thorny legal and medical issues which accompany even the most fundamental decisions regarding an injured worker’s entitlement to, and a carrier’s liability for, medical treatment. Here, the JCC, by application of the major contributing cause standard in section
 
 *331
 
 440.09(l)(b) denied a surgery (which was indisputably medically necessary) simply because the EMA opined that Claimant, who was fifty-six years old, had age-appropriate degeneration in his spine which preexisted both dates of accident. However, according to all of the medical evidence admitted into evidence, the degeneration in Claimant’s spine predating both accidents merely bespeaks Claimant’s age and, significantly, this condition did not (and, reasonably, would not) independently require any level of treatment either before or after Claimant’s two compensable accidents.
 

 Moreover, all of the medical evidence, including the testimony of the EMA, was consistent in explaining that the significant and anomalous changes in the cervical spine which contributed to Claimant’s need for the surgery were the natural sequela of the compensable surgery for the 2005 accident and injuries, which our case law instructs becomes part of the compensable injury.
 
 See Spacal (Sutton) v. Marietta,
 
 642 So.2d 46, 47 (Fla. 1st DCA 1994) (holding E/C is required to provide any remedial treatment and care which is necessitated by authorized surgery or complications thereof). Under these facts, the JCC erred by including Claimant’s normal, aged condition as a contributing, legal cause of Claimant’s need for surgery and then applying the major contributing cause standard to deny the surgery.
 
 See Pizza Hut v. Proctor,
 
 955 So.2d 637 (Fla. 1st DCA 2007);
 
 Pearson v. Paradise Ford,
 
 951 So.2d 12, 17 (Fla. 1st DCA 2007) (stating “it seems evident that the legislature intended [440.09](1)(b) to apply only when the claimant’s need for treatment or benefits is caused by the impact of an employment accident combining with a preexisting injury or condition that is unrelated to an employment accident”).
 

 In sum, because all of the medical evidence establishes that the only contributing causes of Claimant’s need for the cervical spine fusion were occupational in nature, the JCC erred in applying the major contributing cause standard to deny the surgery. Accordingly, the order on appeal is reversed and this case is remanded for entry of an order authorizing the surgical spine fusion.
 

 REVERSED and REMANDED with directions.
 

 WETHERELL and ROWE, JJ., concur; BENTON, C.J., concurs in the judgment.