Filed 12/28/15

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| STEPHEN MOORE,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>WILLIAM JESSUP UNIVERSITY,<br><br>    Defendant and Respondent. | C073433<br><br>(Super. Ct. No. SCV0030282) |

APPEAL from a judgment of the Superior Court of Placer County, Michael A. Jacques, Judge.  Affirmed.

Law Offices of Alan M. Laskin, Alan M. Laskin and Darren Guez for Plaintiff and Appellant.

Prout Le Vangie, Levangie Law Group, Michael J. Baytosh, Katy A. Cummings, and Michael J. Levangie for Defendant and Respondent.

Plaintiff Stephen Moore, a United Parcel Service (UPS) delivery driver, was injured when he lifted a box with a shipping label prepared by defendant William Jessup University (University) that inaccurately stated the weight of the box. Moore appeals from the judgment entered in favor of the University after the trial court granted summary judgment on Moore's sole cause of action for negligence. The trial court concluded the University owed Moore no legal duty of care and that the doctrine of primary assumption of risk barred Moore's action.

Moore contends the trial court erred in granting the University summary judgment because the doctrine of primary assumption of risk does not apply where the University increased the risk of injury to Moore by understating the weight of the box and failing to use highlighted tape to mark the box. Moore also claims the University owed him a duty of care under the test articulated in *Rowland v. Christian* (1968) 69 Cal.2d 108.[1]

Although a defendant has no duty to protect a plaintiff from risks inherent in an activity, a defendant has a duty not to increase the risks. The evidence in this case establishes that the risk of injury from lifting heavy boxes that may be labeled with inaccurate weight information was inherent in Moore's job as a UPS delivery driver. UPS does not require customers to weigh packages before labeling them, and customers sometimes inaccurately identify the weight of packages. UPS instructs its delivery drivers on proper lifting techniques and it trains its employees to test the weight of a package before lifting it.

Courts have held that, as a matter of public policy, it is unfair to impose a duty on a defendant to prevent an injury to a plaintiff arising from the very condition or hazard the defendant retained the plaintiff to confront. The primary assumption of risk doctrine does not require a plaintiff to assume every possible risk presented in an occupation, but

---

[1] *Rowland v. Christian* was superseded by statute on another point, as stated in *Smith v. Freund* (2011) 192 Cal.App.4th 466 at footnote 5.

here, by mislabeling the package, the University did not increase the risks beyond those that were inherent in Moore's job. Accordingly, the primary assumption of risk doctrine applies and bars Moore's negligence action, and we need not address whether the University owed Moore a duty of care under the factors set forth in *Rowland v. Christian*. We will affirm the judgment.

## BACKGROUND

Moore began working for UPS in 1989. As of January 2010, he had been a UPS delivery driver for 15 years, and he had 20 years of experience lifting and handling packages for UPS. Moore lifted heavy boxes on a daily basis as a fundamental part of his occupation as a UPS delivery driver.

UPS instructed its employees on proper lifting techniques. It trained employees to test the weight of a package before lifting it, and to not lift packages weighing more than 70 pounds. UPS employees were supposed to "roll" heavy packages onto a hand truck and "roll" the package from the hand truck into the delivery truck. A UPS delivery driver may request assistance from other UPS personnel to move a package weighing 70 or more pounds.

UPS customers were required to attach warning labels to packages weighing 70 pounds or more. But UPS customers sometimes mislabeled packages.

Moore stopped at the University to deliver a "next day air" envelope on the morning of January 29, 2010. While at the University, Moore saw 24 boxes stacked in the UPS pick up area of the University's mailroom. The boxes were all approximately the same size and shape. Each box was about the size of a photocopy-paper box. All of the boxes had UPS shipping labels attached. Moore looked at all the shipping labels on the boxes. Each label stated each box weighed 48 pounds.

Moore used a hand truck to move the boxes. Although he encountered shipping labels stating inaccurate weights at least weekly on his route, Moore relied on the weight

3

stated on the shipping labels to determine how he would move the 24 boxes he encountered at the University that day.

Moore lifted four boxes onto his hand truck without incident. Based on his 20 years of experience, he estimated the first four boxes he lifted weighed about 48 pounds each. When he lifted the fifth box, Moore felt pain in his wrist, shoulder, and neck. Based on his 20 years of experience, Moore estimated the fifth box he lifted weighed approximately 70 to 80 pounds. If the shipping label on the fifth box had stated that the box weighed 80 pounds, Moore would have slid the box instead of lifting it and he may have asked for assistance.

Moore filed a workers' compensation claim and received all available workers' compensation benefits for his injuries. Most of his medical bills were paid by his employer's workers' compensation insurer. Workers' compensation doctors ultimately assessed Moore's condition as permanent and stable, and Moore received a cumulative disability rating of five percent.

Moore also sued the University, asserting a cause of action for negligence. The University moved for summary judgment on the ground that it did not owe a duty to protect Moore from injuries arising from lifting heavy boxes, which was an inherent risk of his employment, and the University did not increase the risk inherent in Moore's job.

Brian Lucas, manager of the University's bookstore, and Cameron Wilson, interim manager of the bookstore, submitted declarations in support of the University's summary judgment motion. Lucas and Wilson described the bookstore's practice in shipping four or more boxes of textbooks. But Lucas did not know whether any boxes UPS may have picked up from the University on January 29, 2010, were from the bookstore. The bookstore was not the only entity within the University that shipped large boxes using UPS. Lucas did not find any records of a shipment left for UPS pick up on January 29, 2010. There were no records establishing what was in the boxes Moore picked up. And Lucas did not know the weight of any box Moore picked up from the University.

Wilson was the only person employed by the bookstore in January 2010. But he did not know who packed the boxes Moore picked up from the University on January 29, 2010. He did not know how any box Moore picked up from the University on that date was prepared for shipping.[2]

The trial court granted the University's motion and entered judgment in favor of the University and against Moore. The trial court concluded the University owed Moore no duty of care, and the doctrine of primary assumption of risk barred Moore's action.[3]

STANDARD OF REVIEW

Summary judgment provides courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute. (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 843 (*Aguilar*).) A defendant moving for summary judgment may demonstrate that the plaintiff's cause of action has no merit by showing that one or more elements of the cause

---

[2] Wilson's declaration in support of the University's summary judgment motion suggested Wilson packed and prepared the shipping labels for the boxes Moore picked up from the University on January 29, 2010. The declaration states none of the 24 boxes Moore allegedly picked up from the University on January 29, 2010, weighed more than 55 pounds. However, admissions made during discovery govern over contrary declarations submitted in support of summary judgment. (*Visueta v. General Motors Corp.* (1991) 234 Cal.App.3d 1609, 1613.)

[3] The University submitted additional portions of the deposition testimony of Lucas and UPS employee David Moss in its reply to Moore's opposition to summary judgment in the trial court. Generally, a party moving for summary judgment may not rely on new evidence filed with its reply papers. (*San Diego Watercrafts, Inc. v. Wells Fargo Bank* (2002) 102 Cal.App.4th 308, 316.) A failure to object to new evidence may result in a forfeiture which permits the trial court to consider the new evidence. (*Jimenez v. County of Los Angeles* (2005) 130 Cal.App.4th 133, 140; *Gafcon, Inc. v. Ponsor & Associates* (2002) 98 Cal.App.4th 1388, 1426.) The trial court did not, however, consider the new evidence submitted with the University's reply papers. Neither do we.

of action cannot be established. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra*, 25 Cal.4th at p. 849.) This showing must be supported by evidence, such as affidavits, declarations, admissions, interrogatory answers, depositions, and matters of which judicial notice may be taken. (Code Civ. Proc., § 437c, subd. (b)(1); *Aguilar, supra*, 25 Cal.4th at p. 855.)

After the defendant meets its threshold burden, the burden shifts to the plaintiff to present evidence showing that a triable issue of one or more material facts exists as to that cause of action. (Code Civ. Proc., § 437c, subd. (p)(2); *Aguilar, supra*, 25 Cal.4th at p. 850.) The plaintiff may not simply rely on the allegations of his complaint but, instead, must set forth the specific facts showing the existence of a triable issue of material fact. (Code Civ. Proc., § 437c, subd. (p)(2).) A triable issue of material fact exists if, and only if, the evidence reasonably permits the trier of fact to find the contested fact in favor of the plaintiff in accordance with the applicable standard of proof. (*Aguilar, supra*, 25 Cal.4th at p. 850.)

In ruling on the motion, the trial court views the evidence and inferences therefrom in the light most favorable to the plaintiff. (*Aguilar, supra*, 25 Cal.4th at p. 843.) If the trial court concludes the evidence or inferences raise a triable issue of material fact, it must deny the defendant's motion. (*Id.* at p. 856.) But the trial court must grant the defendant's motion if the papers show there is no triable issue as to any material fact and that the defendant is entitled to a judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).)

We review an order granting summary judgment de novo. (*Aguilar, supra*, 25 Cal.4th at p. 860.) We independently examine the record to determine whether a triable issue of material fact exists, liberally construing the evidence and resolving all doubts concerning the evidence in favor of the party opposing summary judgment. (*Patterson v. Domino's Pizza, LLC* (2014) 60 Cal.4th 474, 499-500; *Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 767.) The trial court's stated reasons for granting

6

summary judgment are not binding on us because we review its ruling, not its rationale. (*Coral Construction, Inc. v. City and County of San Francisco* (2010) 50 Cal.4th 315, 336.)

DISCUSSION

Moore contends the trial court erred in granting summary judgment to the University based on the primary assumption of risk doctrine. He says that while his job as a professional delivery driver may have included a risk of injury when lifting a heavy package, the doctrine of primary assumption of risk does not bar his negligence action because the University increased the risk of injury to him by failing to state the true weight of the box and by failing to use highlighted tape to mark the box.

The California Supreme Court has described two categories for assumption of risk, primary and secondary. (*Knight v. Jewett* (1992) 3 Cal.4th 296, 309, 314-315.) Secondary assumption of risk involves instances in which a defendant owes the plaintiff a duty of care and breaches that duty, but the plaintiff knowingly encounters a risk created by the breach of the duty. (*Id.* at p. 308.) The defendant's liability in such cases is determined under comparative fault principles. (*Id.* at pp. 310-311.)

Primary assumption of risk, on the other hand, excuses the defendant from the usual duty of ordinary care which everyone owes to avoid injury to others.[4] (Civ. Code, § 1714, subd. (a); *Priebe v. Nelson* (2006) 39 Cal.4th 1112, 1120-1121 ["A finding that the doctrine of primary assumption of risk applies in any given factual context is, in essence, a determination, reached as a matter of law, that the defendant should be excused from the usual duty of care based on some clear, overriding statutory or public

---

[4] The factors set forth in *Rowland v. Christian, supra,* 69 Cal.2d 108, when balanced together, may also justify a departure from the usual duty of ordinary care. (*Cabral v. Ralphs Grocery Co*. (2011) 51 Cal.4th 764, 771.) The primary assumption of risk doctrine is different from the concepts of tort liability enunciated in *Rowland v. Christian*. (*Krueger v. City of Anaheim* (1982) 130 Cal.App.3d 166, 169.)

7

policy."]; *Knight v. Jewett, supra,* 3 Cal.4th at p. 315.)  If it applies, primary assumption of risk completely bars recovery in a negligence action because, as a matter of law, the defendant does not owe a legal duty of care to the plaintiff.  (*Gregory v. Cott* (2014) 59 Cal.4th 996, 1001; *Beninati v. Black Rock City, LLC* (2009) 175 Cal.App.4th 650, 658 (*Beninati*).)

Whether the defendant owes the plaintiff a duty is " ' "not an immutable fact of nature ' "but only an expression of the sum total of those considerations of policy which lead the law to say that the particular plaintiff is entitled to protection." ' " ' "  (*Avila v. Citrus Community College Dist.* (2006) 38 Cal.4th 148, 160-161, italics omitted (*Avila*).)  Thus, the existence of a duty and whether a case falls within the primary assumption of risk doctrine are questions of law to be decided by the court.  (*Ibid.*; *Priebe v. Nelson, supra,* 39 Cal.4th at p. 1128; *Knight v. Jewett, supra,* 3 Cal.4th at p. 313; *Beninati, supra,* 175 Cal.App.4th at p. 656.)

"Primary assumption of risk applies only when a court, after examining the nature of the particular activity and the parties' relationship to that activity, concludes that a plaintiff engaged in the particular activity is harmed by the risks inherent in the activity. [Citation.]  The conclusion that a particular activity necessarily encompasses risks inherent in the nature of the activity means that [as a matter of law] the defendant has no duty to protect the plaintiff from those risks [citation]."  (*Huffman v. City of Poway* (2000) 84 Cal.App.4th 975, 994; see *Knight v. Jewett, supra,* 3 Cal.4th at pp. 308, 314-315.)  While a defendant has no duty to protect a plaintiff from risks inherent in an activity, however, a defendant has a duty to not increase the risks of that activity.  (*Gregory v. Cott, supra,* 59 Cal.4th at p. 1010-1011; *Huffman, supra,* 84 Cal.App.4th at pp. 979, 994-995.)

" 'Judges deciding inherent risk questions . . . may consider not only their own or common experience with the . . . activity involved but may also consult case law, other published materials, and documentary evidence introduced by the parties on a motion for

8

summary judgment.' " (*Gregory v. Cott, supra,* 59 Cal.4th at p. 1006, fn. 6; see *Amezcua v. Los Angeles Harley-Davidson, Inc.* (2011) 200 Cal.App.4th 217, 233; *Luna v. Vela* (2008) 169 Cal.App.4th 102, 110-111.) The inquiry whether the primary assumption of risk applies and whether the defendant owes the plaintiff a duty to not increase the risks inherent in an activity is based on objective factors having to do with the nature of the subject activity and the relationship of the plaintiff and the defendant to that activity. (*Gregory v. Cott, supra*, 59 Cal.4th at pp. 1001-1002; *Priebe v. Nelson, supra*, 39 Cal.4th at pp. 1123, fn. 2, 1128; *Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 482.) The plaintiff's subjective appreciation or acceptance of the foreseeable occupational hazard involved is immaterial. (*Priebe v. Nelson, supra*, 39 Cal.4th at p. 1123, fn. 2.)

The firefighter's rule, upon which the University relies, and the analogous veterinarian's rule, are examples of the primary assumption of risk doctrine applied in the employment context. (*Gregory v. Cott, supra,* 59 Cal.4th at p. 1001; *Priebe v. Nelson, supra,* 39 Cal.4th at p. 1121-1122, 1132.) Those rules are based on the public policy principle that " 'it is unfair to charge the defendant with a duty of care to prevent injury to the plaintiff arising from the very condition or hazard the defendant has contracted with the plaintiff to remedy or confront.' " (*Gregory v. Cott, supra*, 59 Cal.4th at p. 1002.)

Cases applying the firefighter's rule in its most classic form have held a person who starts a fire owes no duty of care to the firefighter who is employed to respond to fires. (*Priebe v. Nelson, supra,* 39 Cal.4th at pp. 1121-1122; *Neighbarger v. Irwin Industries, Inc*. (1994) 8 Cal.4th 532, 541.) The firefighter's rule has been applied to police officers. (*Boon v. Rivera* (2000) 80 Cal.App.4th 1322, 1327.) In that context, it has been held that a member of the public whose misconduct called for police intervention does not owe a duty of care to the responding police officer with respect to the original misconduct which caused the officer to be summoned. (*Ibid*.)

The firefighter's rule has also been applied to bar a negligence action by a tow truck driver, injured while rendering assistance to a car owner who suffered a mechanical

9

breakdown on the side of a freeway, when the tow truck driver had a contractual obligation (through the car owner's automobile club membership) to help the car owner. (*Dyer v. Superior Court* (1997) 56 Cal.App.4th 61, 64, 70-72.) The appellate court in *Dyer* held that the particular risk of harm in that case -- being injured while working on the shoulder of a freeway -- was the very risk the tow truck driver was contractually obligated to confront. (*Id.* at p. 71.) More recently, the California Supreme Court applied the firefighter's rule to bar an action by a professional in-home caregiver injured by an Alzheimer's patient; the caregiver was injured as a result of the very risk she was hired to encounter. (*Gregory v. Cott, supra*, 59 Cal.4th at pp. 999-1000, 1005-1009; see *Herrle v. Estate of Marshall* (1996) 45 Cal.App.4th 1761, 1765, 1772.)

The veterinarian's rule is an offshoot of the firefighter's rule. (*Priebe v. Nelson, supra*, 39 Cal.4th at p. 1119.) Cases applying the veterinarian's rule have held that a person who contracted with a veterinarian to treat his dog does not owe a duty of care to the veterinarian or the veterinarian's assistant if the dog bites the veterinarian or assistant during treatment. (*Id.* at p. 1122; *Nelson v. Hall* (1985) 165 Cal.App.3d 709, 715.) For example, this court concluded in *Nelson v. Hall* that the risk of dog bites during treatment is a hazard endemic to the occupation of a veterinary assistant. (*Id.* at p. 714; see *Willenberg v. Superior Court* (1986) 185 Cal.App.3d 185, 187 ["a visit to the veterinarian's office can bring about unpredictable behavior in a normally docile animal, and this is an inherent risk which every veterinarian assumes"].) Additionally, "[t]he veterinarian determines the method of treatment and handling of the dog. He or she is the person in possession and control of the dog and is in the best position to take necessary precautions and protective measures. The dog owner who has no knowledge of its particular vicious propensities has no control over what happens to the dog while being treated in a strange environment and cannot know how the dog will react to treatment. A dog owner who does no more than turn his or her dog over to a qualified veterinarian for medical treatment should not be held strictly liable when the dog bites a

10

veterinarian or a veterinary assistant while being treated." (*Nelson v. Hall, supra,* 165 Cal.App.3d at p. 715.)

The California Supreme Court extended the veterinarian's rule to commercial kennel workers in *Priebe v. Nelson, supra,* 39 Cal.4th 1112. The Supreme Court held that the plaintiff, by virtue of her employment as a kennel worker, assumed the risk of being bitten or otherwise injured by the dogs under her care and control while in the custody of the commercial kennel where she worked pursuant to a contractual boarding agreement. (*Id.* at p. 1132.) The Supreme Court also identified public policies that justified excusing a duty of care by dog owners to kennel workers: (1) kennel workers are trained to safely care for, walk, and handle dogs left in their exclusive care and control, and are in the best position to look out for their own safety when working with those dogs in the dog owners' absence; (2) the kennel has a contract with the dog owners, and kennel workers receive compensation for the services they provide, which services include the safe care and handling of dogs left in their charge, and (3) applying the veterinarian's rule would encourage dog owners to use the services of licensed commercial kennels, which serves the salutary purpose behind the dog bite statute, i.e., protecting the public from harm by dogs not properly under their owners' control. (*Id.* at pp. 1129-1131.)

Nevertheless, the primary assumption of risk doctrine does not require a plaintiff to assume every possible risk he may encounter while engaged in his occupation. (*Lipson v. Superior Court* (1982) 31 Cal.3d 362, 371.) Primary assumption of risk does not shield a defendant from liability for misconduct which is independent from that which necessitated the plaintiff's presence. (*Id.* at pp. 367-369; see *Cohen v. McIntyre* (1993) 16 Cal.App.4th 650, 655-656.) Thus, the firefighter's rule does not bar a firefighter's action against the owners of a chemical manufacturing plant who negligently or intentionally misinformed the firefighter, after he arrived at the scene of a chemical boilover to which he was summoned, that the chemicals involved in the boilover were not

toxic.  (*Lipson, supra,* 31 Cal.3d at pp. 365, 370.)  The Supreme Court concluded the firefighter's rule did not apply in that case because the alleged misrepresentation occurred after the firefighter arrived on the scene, was misconduct independent of any tortious act which may have caused the chemical boilover, and enhanced the risk of harm to the firefighter.  (*Id.* at pp. 370-373.)  The Supreme Court said, "the risk that the owner or occupier of a burning building will deceive a firefighter as to the nature or existence of a hazard on the premises is not an inherent part of a firefighter's job.  A fireman cannot reasonably be expected to anticipate such misconduct on the part of an owner or occupier of a building."  (*Id.* at p. 371; see *Boon v. Rivera, supra,* 80 Cal.App.4th at p. 1330 [quoting *Lipson v. Superior Court, supra,* 31 Cal.3d 362 in case involving misrepresentation to a police officer].)

Applying the above principles to the facts of this case, we conclude the risk of injury from lifting heavy boxes that may be labeled with inaccurate weight information was inherent in Moore's job as a UPS delivery driver, and the University did not owe a duty to protect Moore from that risk; nor did the University increase the risk of harm to Moore.

Receiving an injury in the course of moving or lifting heavy objects is a risk inherent in Moore's occupation.  (See, e.g., *Sepulveda-Vega v. Suffolk Bancorp.* (N.Y.App.Div. 2014) 119 A.D.3d 850 [989 N.Y.S.2d 371] [a courier for an armored car service may not hold others responsible for his injury resulting from lifting a heavy bag of coins because such injury was an ordinary and obvious hazard of his job, he elected to lift the bag without assistance, and the bag was not over an accepted or contractually agreed upon weight]; *Bysczynski v. United Parcel Services, Inc.* (Fla.Dist.Ct.App. 2010) 53 So.3d 328, 329 [UPS worker suffered neck and shoulder injury from lifting 90-pound package]; *Cantrell Supply, Inc. v. Liberty Mutual Ins. Co.* (Ky.Ct.App. 2002) 94 S.W.3d 381, 382 [delivery driver for UPS injured his back while lifting a heavy package]; *Anderson v. Bush Industries, Inc.* (N.Y.App.Div. 2001) 280 A.D.2d 949, 950

[720 N.Y.S.2d 699, 700] ["the hazard of being injured as a result of repeatedly lifting heavy boxes and loading them into a truck is inherent in the work of a UPS driver"].) The risk of injury based on inaccurate weight information on a shipping label prepared by a UPS customer was also an obvious risk of Moore's job. (*Priebe v. Nelson, supra,* 39 Cal.4th at pp. 1129-1130 [professional assumed the risk of being bitten during veterinary treatment where the risk of dog bites was a specific known hazard of his occupation]; *Avila, supra*, 38 Cal.4th at p. 164 [batter being intentionally hit by an opposing pitcher was an inherent risk in baseball where the practice was "accepted by custom"].)

The University secured the services of Moore's employer to ship the boxes that Moore was moving as part of his regular job duties when he was injured. (*Priebe v. Nelson, supra,* 39 Cal.4th at pp. 1130-1131 [the fact that the professional had a contractual relationship with the defendant and received compensation for her services, which included the safe handling of the defendant's dog, supported the application of the primary assumption of risk doctrine in a dog bite case].) There is no evidence UPS customers have borne the burden of ensuring that UPS delivery drivers used proper techniques to move or lift heavy boxes. To the contrary, like the kennel worker who was trained to safely handle dogs in *Priebe v. Nelson, supra,* 39 Cal.4th 1112, Moore was trained on proper lifting techniques. Although UPS customers state the weight of a package on the shipping label, there is no evidence UPS customers (whether by virtue of contract or custom) provided such weight information so that UPS delivery drivers can determine how to safely handle a package. Instead, there is evidence that UPS customers mislabel packages and that Moore encountered shipping labels with inaccurate weights at least weekly on his route. Additionally, Moore did not dispute that UPS did not require its customers to use a scale to weigh packages. Thus, the circumstances in this case are distinguishable from those in *Lipson v. Superior Court, supra,* 31 Cal.3d 362, where the California Supreme Court held that a firefighter could not reasonably be expected to

13

anticipate that the defendant would misrepresent the nature of the hazard he was called to contain.  (*Id.* at p. 371.)  Here, UPS delivery drivers had a reason not to rely on customer weight representations in determining how to move or lift packages.  UPS prudently trained its employees to test the weight of a package before lifting it.

Moore had 20 years of experience lifting and handling packages for UPS.  He controlled how he would move the boxes he encountered at the University.  Moore had the option of calling for assistance from another UPS employee.  Moore was in the best position to guard against lifting injuries.  (*Priebe v. Nelson, supra,* 39 Cal.4th at p. 1130 [the fact that trained and paid professionals were in the best position to take necessary safety precautions supported the application of the primary assumption of risk doctrine to commercial kennel workers].)

Under the particular circumstances of this case, policy considerations based on the nature of Moore's job duties and the relationship between the parties do not support a conclusion that the University had a duty to protect Moore against his injuries or that the University increased the risk of harm to Moore.  Moore's job included a risk of injury from lifting heavy boxes, including those mislabeled by UPS customers.  The University did not do anything to increase that risk.  Further, applying the doctrine of assumption of risk in cases like this promotes the use of commercial shipping or delivery services and properly places the burden of ensuring the safety of delivery persons, who have to move or lift packages, on the businesses who employ them and can provide necessary training, supervision, and assistance in their work.

*Anderson v. Bush Industries, Inc., supra*, 720 N.Y.S.2d 699, supports our conclusion.  The appellate court in that case held a UPS customer had no duty to protect a UPS driver from injury related to lifting heavy boxes.  (*Id*. at p. 700.)  The driver in *Anderson v. Bush Industries* alleged the customer's employees were negligent in piling boxes to a height that required the driver to reach over his head.  (*Ibid.*)  The appellate court said the risk of injury from repeatedly lifting heavy boxes and loading them into a

14

truck was inherent in the driver's employment, and the driver's injury resulted from that risk, which was the subject of the contract between UPS and the customer. (*Ibid.*) The appellate court concluded the customer did not have a duty to protect the UPS driver from the hazards resulting from methods over which the customer exercised no supervisory control. (*Ibid.*)

Here, as we have explained, the University did not supervise Moore's work in lifting or moving packages. Injury from lifting heavy boxes that may be mislabeled by UPS customers was a risk inherent in Moore's job. The University did not have a duty to protect Moore from injury that resulted from that risk.

Secondary assumption of risk does not apply because we conclude the University did not have a duty to prevent injuries that result from a risk inherent in Moore's occupation. (*Gregory v. Cott, supra*, 59 Cal.4th at p. 1007 [secondary assumption of risk is predicated on the existence of a duty].) Because the existence of a duty is a necessary element of a negligence action (*Bigbee v. Pacific Tel. & Tel. Co*. (1983) 34 Cal.3d 49, 54, fn. 3) and the University owed Moore no duty in the circumstances present, the trial court did not err in granting the University summary judgment. Having held that the University did not owe Moore a duty under the primary assumption of risk doctrine, we need not address Moore's contention that the University owed him a duty of care under the factors set forth in *Rowland v. Christian, supra*, 69 Cal.2d 108. (*Priebe v. Nelson, supra,* 39 Cal.4th 1112 [no analysis of *Rowland v. Christian* factors in case applying the primary assumption of risk to bar action]; *Knight v. Jewett, supra*, 3 Cal.4th 296 [same]; *Mastro v. Petrick* (2001) 93 Cal.App.4th 83, 88, fn. 1 [the primary assumption of risk doctrine is an exception to applicability of the *Rowland v. Christian* test].)

## DISPOSITION

The judgment is affirmed.  The University shall recover its costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)

|                    |
| ------------------ |
| /S/                |
| Mauro, J.          |

We concur:

| /S/          |
| ------------ |
| Raye, P. J.  |

| /S/          |
| ------------ |
| Hull, J.     |

16