Filed 12/19/22  Abboushi v. Casurance Agency Ins. Services, LLC CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Placer)

----

| | |
|---|---|
| JAMAL ABBOUSHI, | C093869 |
| Plaintiff and Appellant, | (Super. Ct. No. SCV0043334) |
| v. | |
| CASURANCE AGENCY INSURANCE SERVICES, LLC, et al., | |
| Defendants and Respondents. | |

Plaintiff Jamal Abboushi sued defendants Casurance Agency Insurance Services, LLC (Casurance) and Wael Mohammad (collectively defendants) for negligence following a fire at his home.  Plaintiff sued defendants because the property insurance policy procured by defendants had previously been canceled for nonpayment and plaintiff had no other insurance in place to cover the fire damage.  Defendants filed a motion for summary judgment (motion), which the trial court granted.  Plaintiff appeals, arguing the trial court erred in reading the allegations in the complaint too narrowly and triable issues

1

of material fact exist as to defendants' negligence. Plaintiff further asserts the trial court abused its discretion in denying his oral request for leave to amend the complaint, which was made during the hearing on the motion. We affirm.

FACTUAL AND PROCEDURAL BACKGROUND

Pertinent to this appeal, plaintiff sued defendants Nexera Holding LLC, dba Newfi (Nexera); NewRez LLC, dba Shellpoint Mortgage Servicing (Shellpoint); and Nextitle, a Title and Escrow Company (Nextitle) for negligence, asserting: "Between May 1, 2018 and August 31, 2018, Plaintiff was in the process of negotiating a loan with Nexera to refinance [plaintiff's] Property. As part of the refinance process, Casurance and Mohammad agreed to procure a policy of property insurance on the Property from Chubb Insurance which would protect Plaintiff, Plaintiff's equity in the Property, and the contents of the Property from hazards including fire. [¶] . . . Nextitle and Nexera agreed that if Plaintiff deposited sufficient funds with them to cover the cost of the property insurance, they would pay for the policy of property insurance. [¶] . . . Based on these agreements, Plaintiff deposited funds into an escrow account managed and maintained by Nextitle for the express purpose of paying for the policy of property insurance. [¶] . . . At all times thereafter, Casurance, Mohammad, Nextitle, and Nexera, and each of them, represented to Plaintiff that there was a policy of property insurance on the Property from Chubb Insurance which provided coverage in the amount of $4,460,000 for damage to the dwelling and coverage of $1,784,000 for damage to the contents of the dwelling ('the Policy')."

"From the time that escrow closed on the loan from Nexera through November 1, 2018, Plaintiff made monthly payments into an escrow account which was managed and maintained by Nexera, which included funds to pay the monthly premiums on the Policy. Nexera represented to Plaintiff that it was using these funds to pay the premiums on the Policy. [¶] . . . From November 1, 2018, through March 17, 2019, Plaintiff made monthly payments into an escrow account which [w]as managed and maintained by

2

Shellpoint, which included funds to pay the monthly premiums on the Policy. Shellpoint represented to Plaintiff that it was using these funds to pay for the premiums on the Policy. [¶] . . . [¶] . . . On or about March 17, 2019, a fire ignited on the Property which caused significant damage to the dwelling and its contents. When Plaintiff submitted a claim for insurance benefits to Chubb Insurance under the Policy, Chubb Insurance denied the claim on grounds that there was no policy in effect because no one had ever paid for the Policy. [¶] . . . At all times mentioned herein, Defendants, and each of them, knew or should have known that the Policy was not in effect in sufficient time that the default could have been cured before the Property was damaged by fire. [¶] . . . At all times mentioned herein, Defendants had a duty to pay for the Policy and/or to inform Plaintiff that the Policy was not in effect due to nonpayment so that Plaintiff could cure the default and ensure the Policy was in effect. [¶] . . . At no time before March 17, 2019, did Defendants ever pay for the Policy or inform Plaintiff that the Policy was not in effect due to nonpayment."

Plaintiff alleged he was damaged as a "direct result of the Defendants' negligence and carelessness" in that he "suffered economic damages in the amount of insurance coverage which would have been available to him but for Defendants' wrongful conduct" and emotional damages.

Defendants moved for summary judgment, arguing they performed their duty to procure the Chubb Insurance (Chubb) policy for plaintiff and, despite having no duty or obligation to inform him that the policy had been canceled for nonpayment, nonetheless voluntarily advised plaintiff of that fact in January 2019, well before the fire. Thus, defendants asserted, plaintiff could not establish his claim of negligence against them.

In his opposition, plaintiff argued insurance brokers can be held liable for negligently handling their clients' insurance and triable issues of material fact existed as to: (1) defendants' negligence in leading the title company to believe plaintiff's property was covered by a previously expired AIG policy; (2) defendants' failure to ensure the

3

Chubb binder[1] was in effect when plaintiff's loan closed; and (3) defendants' negligence in failing to procure coverage for plaintiff's property after learning the Chubb policy had been canceled. At the hearing on the motion, plaintiff further requested leave to amend the complaint, if the trial court was inclined to grant the motion.

After considering the briefing and oral argument, the trial court ruled: "Here, plaintiff alleges between May and August of 2018, defendants agreed to procure the Chubb insurance policy for him. [Citation.] Defendants represented to plaintiff that the Chubb policy would provide $4.46 million in coverage for the home along with an additional $1.784 million in coverage for the contents of the home. [Citation.] In February of 2019, plaintiff requested the defendants add Shellpoint to the Chubb insurance policy as a named insured. [Citation.] Defendants, however, knew the Chubb policy was not in effect due to lack of payment and had a duty to pay the policy and/or inform plaintiff that the policy was not in effect prior to the March 17, 2019 fire. [Citation.] Defendants did not inform plaintiff that the policy was not in effect [due to] nonpayment nor did the defendants make a payment on the policy. [Citation.] Plaintiff alleges he has suffered significant damages as a result of defendants' negligent and careless conduct. [Citation.] These are the allegations that frame the negligence claim against the moving defendants.

"Defendants submit evidence showing they assisted plaintiff in procuring the Chubb policy in July of 2018. [Citation.] They also present evidence that on January 30, 2019, defendants informed plaintiff, through his authorized contact and brother

---

[1] Plaintiff's expert declared a binder is a temporary insurance policy intended to provide coverage that will allow the insured to have the insurance coverage in place when a loan closes on a property. If the loan does not close, the binder simply expires. If the loan closes, the policy is paid through the escrow account at closing. A binder can last between 30 and 90 days. If a loan closing is delayed, a 30-day binder can be extended, if the insurance company agrees.

4

Mohammad Abboushi, the Chubb policy had been cancelled for nonpayment. [Citation.] Further, they submit evidence showing defendants requested plaintiff provide proof of payment so defendants could try to have the Chubb policy reinstated but plaintiff did not provide any such documentation until after the fire occurred on March 17, 2019. [Citation.] This evidence is sufficient to establish defendants responded to plaintiff's requests and informed him, prior to the fire, the Chubb policy was no longer in effect due to nonpayment. Since defendants have met their initial burden, the burden now shifts to plaintiff to establish a triable issue of material fact.

"Plaintiff, however, does not submit sufficient evidence to establish a triable issue of material fact. To reiterate, the crux of plaintiff's allegations against defendants is that they had a duty to inform plaintiff the Chubb policy was no longer in effect due to nonpayment but failed to do so prior to the fire. [Citation.] It is undisputed defendants procured the Chubb policy as requested by plaintiff. [Citation.] It is also undisputed defendants informed plaintiff the Chubb policy had been cancelled for nonpayment prior to the fire. [Citation.] Plaintiff's additionally submitted facts and evidence do not raise a triable issue on the matter which is at the heart of plaintiff's negligence claim, that is, the undisputed fact defendants informed plaintiff the Chubb policy had been cancelled. Since plaintiff has failed to meet his burden, the motion is granted."

The trial court further denied plaintiff's request for leave to amend the complaint, which is discussed in greater detail *post*.

Plaintiff timely appeals.

DISCUSSION

I

*The Motion For Summary Judgment Was Properly Granted*

Summary judgment is properly granted when no triable issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) We review the grant of a motion for summary judgment de

5

novo.  (*Law Offices of Dixon R. Howell v. Valley* (2005) 129 Cal.App.4th 1076, 1092.)
We assume the role of the trial court by independently examining the record, and
evaluate the correctness of the trial court's ruling, not its rationale.  (*Moore v. William
Jessup University* (2015) 243 Cal.App.4th 427, 433.)

In conducting this independent review, we apply the same three-step process
required of the trial court:  " 'First, we identify the issues raised by the pleadings, since it
is these allegations to which the motion must respond; secondly, we determine whether
the moving party's showing has established facts which negate the opponent's claims and
justify a judgment in movant's favor; when a summary judgment motion prima facie
justifies a judgment, the third and final step is to determine whether the opposition
demonstrates the existence of a triable, material factual issue.' "  (*Waschek v. Department
of Motor Vehicles* (1997) 59 Cal.App.4th 640, 644.)

The materiality of a fact depends on the issues in the case.  (*Pultz v. Holgerson*
(1986) 184 Cal.App.3d 1110, 1114.)  " '[T]he pleadings "delimit the scope of the issues"
to be determined and "[t]he complaint measures the materiality of the facts tendered in a
defendant's challenge to the plaintiff's cause of action." ' "  (*Laabs v. City of Victorville*
(2008) 163 Cal.App.4th 1242, 1253.)  A defendant moving for summary judgment thus
needs to address only the issues raised in the complaint.  (*Ibid.*)  A plaintiff opposing the
motion cannot raise new, unpled issues; instead, if the plaintiff's evidence would show
some factual assertion, legal theory, or claim not yet pled, the plaintiff should seek leave
to amend the complaint before the hearing on the summary judgment motion.  (*Ibid.*)
The plaintiff's " 'separate statement of material facts is not a substitute for an amendment
of the complaint.' "  (*Ibid.*)

We scrutinize the parties' trial briefs and evidence to determine the existence of a
triable issue of material fact.  (See *Martinez v. County of Los Angeles* (1996)
47 Cal.App.4th 334, 341.)  "A defendant . . . has met his or her burden of showing that a
cause of action has no merit if the party has shown that one or more elements of the cause

6

of action . . . cannot be established, or that there is a complete defense to the cause of action.  Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto.  The plaintiff . . . shall not rely upon the allegations or denials of [his, her, or their] pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto.”  (Code Civ. Proc., § 437c, subd. (p)(2).)

We “view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [his, their, or] her evidentiary submission while strictly scrutinizing [the defendant’s] own showing, and resolving any evidentiary doubts or ambiguities in [the] plaintiff’s favor.”  (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

A

*Identification Of The Issues Raised In The Complaint*

We first address the scope of the allegations in the complaint and plaintiff’s argument that the complaint should be read liberally “to encompass all acts of negligence by Defendants leading to the Chubb policy not being in place when [he] needed it on March 17, 2019.”  Plaintiff asserts the allegations in the complaint “sufficiently allege that Defendants negligently failed to obtain a policy from Chubb that met the requirements of the refinancing process for which it was obtained, i.e., a policy to be paid through the escrow process.”  In plaintiff’s view, the allegations encompass defendants’ negligence in “failing to obtain an insurance policy that could be paid through escrow when the refinancing closed; providing information to the escrow company that inaccurately indicated the property was covered under a policy that had actually been cancelled months earlier; telling the escrow company on the day the refinancing closed that [plaintiff’s] policy was ‘paid in full,’ although it [was] not; concealing information from [plaintiff] about why his policy had been cancelled, which led him to believe the

7

cancellation was a correctable mistake; and failing to follow through on their promise either to get the cancelled policy reinstated or obtain a new policy for [plaintiff]." We decline to read the complaint as broadly as plaintiff requests.

To reiterate, plaintiff asserted a single cause of action for negligence against defendants. "A complaint in an action for negligence must allege (1) the defendant's legal duty of care towards the plaintiff, (2) the defendant's breach of that duty, (3) injury to the plaintiff as a proximate result of the breach, and (4) damage to the plaintiff." (*Jones v. Grewe* (1987) 189 Cal.App.3d 950, 954.)

Plaintiff alleged defendants agreed to procure the Chubb policy; Nextitle and Nexera agreed to pay the Chubb policy with money deposited by plaintiff into an escrow account; after plaintiff deposited funds into the escrow account to pay for the policy, defendants represented to him the Chubb policy was in place; defendants knew or should have known "that the Policy was not in effect in sufficient time that the default could have been cured before the Property was damaged by fire"; defendants "had a duty to pay for the Policy and/or to inform Plaintiff that the Policy was not in effect due to nonpayment so that Plaintiff could cure the default and ensure the Policy was in effect"; defendants did not inform plaintiff prior to March 17, 2019, that the policy was not in effect due to nonpayment; and, as a result, plaintiff suffered damages.

A fair reading of the allegations in the complaint is that plaintiff alleged defendants breached at most two duties: (1) a duty to pay for the Chubb policy; and/or (2) a duty to inform plaintiff in sufficient time that the Chubb policy was not in effect due to nonpayment to allow plaintiff to cure the default. We can locate no allegations in the complaint giving defendants fair notice of the theory that defendants were negligent based on any other acts that caused or contributed *to the cancellation of the Chubb policy*. (*Jones v. Awad* (2019) 39 Cal.App.5th 1200, 1211 ["courts are encouraged to take a liberal approach in determining the scope of the pleadings, so long as those pleadings

8

provide adequate notice to the opposing party of the theories on which relief is generally being sought"].)

We find no merit in plaintiff's assertion that his interrogatory responses resolved any confusion regarding the negligent acts covered by the complaint.[2] Plaintiff asserts his "interrogatory responses informed Defendants that the negligence claim was based in part on the facts that: (1) they knew or should have known long before January 2019 that the Chubb policy was not in effect, but concealed that information from [plaintiff] for months; (2) Defendants knew there was confusion between the Chubb policy and the AIG policy, but they made no effort [to] clarify the situation so that [plaintiff] could understand his money in escrow might not have actually gone to pay for the Chubb policy; and (3) in February 2019, [plaintiff] instructed Defendants to either have the Chubb policy reinstated or obtain other insurance, but they did neither and failed to inform [plaintiff] of that."

It is true that, to the extent interrogatories " 'are used to clarify the contentions of the parties, they are an adjunct to the pleadings' " and " '[l]iberal use of interrogatories for the purpose of clarifying and narrowing the issues made by the pleadings should be permitted and encouraged by the courts.' " (*Burke v. Superior Court of Sacramento County* (1969) 71 Cal.2d 276, 281; see *Jacobs v. Coldwell Banker Residential Brokerage Co.* (2017) 14 Cal.App.5th 438, 445.) It is further true that interrogatories may be used in determining the merits of a summary judgment motion. (*Conn v. National Can Corp.* (1981) 124 Cal.App.3d 630, 640; Code Civ. Proc., § 437c, subd. (b)(1).) Plaintiff is not, however, seeking to use his interrogatory responses to clarify or narrow the issues in the

---

**2**　　We agree with plaintiff that the allegations in the complaint "[were] not limited to the narrow issue of whether [defendants] told [plaintiff] that the Chubb policy had been cancelled *before March 17, 2019*." (Italics added.) As explained *ante*, the allegations in the complaint are fairly read to allege a duty to inform plaintiff of the Chubb policy's cancellation in sufficient time to allow plaintiff to cure the default.

complaint; he is trying to use the responses to *expand* the issues beyond those identified in the complaint. Plaintiff cites no case supporting such a proposition, nor are we aware of any. We decline to establish such precedent.

That said, some of plaintiff's interrogatory responses narrow the issues in the complaint. Whereas plaintiff broadly alleged that all defendants had a duty to pay for the Chubb policy, plaintiff's interrogatory responses make clear that plaintiff was not alleging that Casurance and Mohammad owed that duty to him. Plaintiff further made no such argument in the trial court or on appeal.

For purposes of evaluating the merits of the motion, we therefore consider only whether there is a triable issue of material fact that *defendants were negligent in failing to inform plaintiff of the Chubb policy's cancellation in sufficient time to allow plaintiff to cure the default*. We do not consider plaintiff's arguments that a triable issue of material fact exists as to defendants' purported failure to ensure a policy was in place when escrow closed or their purported negligence in providing inaccurate information about plaintiff's coverage to the escrow company. (See *California Bank & Trust v. Lawlor* (2013) 222 Cal.App.4th 625, 637, fn. 3 [evidence offered on an unpled "claim, theory, or defense is irrelevant because it is outside the scope of the pleadings"].)

B

*Defendants Met Their Burden By Showing*

*Plaintiff Cannot Establish The Element Of Breach*

Code of Civil Procedure section 437c, subdivision (c) provides "[t]he motion for summary judgment shall be granted if *all the papers submitted* show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Italics added.) We thus identify the following undisputed material facts from the parties' papers.

Defendants procured the Chubb policy for plaintiff's property in July 2018. Defendants received a letter from Shellpoint on January 29, 2019, asking for a copy of

10

the declarations page or a copy of plaintiff's full property insurance policy. That same day, defendants texted a picture of the Shellpoint letter to plaintiff's brother, who was authorized to act on plaintiff's behalf. On January 30, 2019, defendants informed plaintiff's brother that they had "just checked on the Chubb policy and it was cancelled back in August for nonpayment." Plaintiff learned about defendants' text message to his brother regarding the cancellation of the Chubb policy around the same time that it was sent. Notwithstanding the notification regarding the cancellation of the Chubb policy, plaintiff continued to believe the Chubb policy was in effect. In response to the notification that the policy was canceled in August 2018, plaintiff's brother responded to defendants, " '[c]an't be was paid in full through escrow.' " To investigate whether the Chubb policy could be reinstated, defendants asked plaintiff's brother to provide proof that the Chubb policy had been paid in escrow. Neither plaintiff nor his brother provided the requested proof of payment to defendants before the fire.[3] Defendants contacted a different insurance broker to obtain a new quote for a property insurance policy, but the premium quoted was very expensive.

As to the last undisputed material fact, the evidence supporting that fact is the transcript of Mohammad's deposition, which was attached to a declaration submitted by plaintiff in support of his opposition to the motion. The transcript shows Mohammad was asked what efforts he made "to secure insurance between January 30th and March 17th, 2019." Mohammad responded he obtained a quote from Lloyd's of London "probably somewhere between January and March," but the "pricing was really high" and plaintiff "didn't like the price on it."

---

[3]    This fact is undisputed even though plaintiff attempted to dispute it. Plaintiff's arguments that defendants already had proof of the payment, should have known the Chubb binder expired before the close of escrow, and had no reason to request the information from plaintiff do not refute the evidence presented by defendants.

11

Summary judgment was appropriate because the undisputed material facts show that defendants notified plaintiff that the policy had been canceled shortly after they learned about it, and the notification was made approximately six weeks before the fire. Assuming a duty existed, defendants thus met their burden of negating the element of breach, which shifted the burden to plaintiff to show a triable issue of material fact.

Plaintiff argues a triable issue of fact exists as to whether defendants informed him that the Chubb policy was canceled because the words in the text message that " 'the policy was cancelled for nonpayment,' . . . did not *inform* [plaintiff] regarding what had happened." He asserts the context surrounding the text message containing those words "shows that Defendants concealed information from [plaintiff] which he needed to understand that the cancellation was not merely a mistake in allocating the payment he had made for the policy." Plaintiff is mistaken.

It is irrelevant whether Shellpoint mistakenly believed the previously canceled AIG policy was still in effect, whether defendants "did not tell [plaintiff] that they had created th[e] confusion by providing false information to the escrow company about the AIG policy during the refinancing process," or whether defendants "did not tell [plaintiff] that they had falsely told the escrow company on the day the loan closed that [plaintiff's] policy was paid in full"—the asserted triable issues of fact that plaintiff relies upon. Plaintiff did not allege that defendants were negligent in causing the Chubb policy to be canceled or in failing to disclose why the Chubb policy was canceled. He further did not allege that defendants concealed material information from him, nor did he allege that defendants breached "their duty of full, honest affirmative disclosure of all material facts regarding th[e] cancellation," as he now asserts on appeal. Such theories are new theories not included in the complaint. Plaintiff merely alleged that defendants breached their duty to inform plaintiff the Chubb policy *had been canceled*. None of the foregoing asserted disputed facts clarify or explain whether defendants breached that duty.

12

Plaintiff further argues a dispute of material fact exists as to whether defendants negligently failed to inform him of the policy cancellation in sufficient time to obtain a replacement policy. He asserts defendants did not "address the issue of whether they promptly informed [him] that his policy was cancelled or whether [plaintiff] had 'sufficient time' to obtain coverage after they finally informed him of the cancellation." We find no merit in these arguments.

It is undisputed defendants notified plaintiff approximately six weeks before the fire that the Chubb policy was not in effect. It is further undisputed that plaintiff's brother asked defendants to obtain a property insurance policy for plaintiff's home at some point in July 2018 and defendants were able to do so that same month, on July 17, 2018. Defendants were thus previously able to obtain a property insurance policy for plaintiff's home in significantly less time than six weeks. Further, defendants were able to obtain a quote from Lloyd's of London for a new property insurance policy, but plaintiff "didn't like the price on it." While plaintiff's expert declared that "[m]ost insurance companies in California will not write policies with such high limits" as required for plaintiff's home, Chubb is one of the few companies that will write such policies, and "[i]t would not have been a simple matter for [plaintiff] to obtain an adequate policy," the expert did not provide an opinion as to whether plaintiff would have had sufficient time to obtain a policy between January 30, 2019, and the date of the fire. We accordingly conclude the trial court properly granted the motion.

II

*The Trial Court Did Not Abuse Its Discretion In Denying*
*Plaintiff's Request For Leave To Amend The Complaint*

A

*Additional Background*

Plaintiff orally requested leave to amend the complaint during the hearing on the motion. Plaintiff's counsel argued that, if plaintiff was allowed to amend the complaint,

13

he "would add in the allegations on four basic areas." Plaintiff proposed to add an allegation that defendants breached their duty to him by "falsifying the proof of insurance documents to show that there was an AIG policy, even though they knew that policy had been cancelled, which created all the confusion in the first place over what policy was in existence and which policy should be paid and whether the policy was paid or not." Plaintiff also proposed to add an allegation that defendants failed "to obtain a policy binder for the Chubb policy that extended beyond" the closing date of plaintiff's loan, "which would have allowed the policy to be paid through escrow." The third proposed allegation was that defendants misrepresented to the title company on the day of plaintiff's loan closing that the hazard insurance policy had been paid in full "when they knew or, certainly, should have known that it was not paid in full and that resulted in the loan closing with no insurance in place." Finally, plaintiff proposed to add the allegation that defendants failed to secure a new policy for him or to have the Chubb policy reinstated even though Mohammad said, "he would, quote, 'take care of it,' unquote."

Plaintiff's counsel further argued the proposed amendments would not require additional discovery because "[e]verybody kn[ew] exactly what the issues [were]" and "the existing complaints [*sic*] already encompasse[d] them." Counsel continued: "You have to infer that by saying [defendants] had a duty that they promised to get the insurance and they failed to get the insurance. And they misrepresented that they had the insurance, yes, you have to infer from that that those were duties and those are breaches of duties, but it's really all there. But we're happy to clarify it and add the information that the parties already all know. It's all been subject to [d]iscovery, extensive [d]iscovery."

The trial court took the matter under submission to further consider the arguments. In its final ruling, the trial court stated: "At the hearing of the motion, in apparent response to the court's tentative ruling to grant the motion, plaintiff asked for leave to amend the complaint. The complaint in this matter was filed on August 13, 2019. No

14

previous requests to amend the complaint before the hearing of this motion were made. The parties discussed whether the request for leave to amend was timely made." The trial court ruled: "Even assuming the request for leave to amend is timely, the court finds the request must be denied. Plaintiff's written opposition to the motion makes no request for leave to amend. Rather, plaintiff's counsel made an oral request for leave to amend at the hearing and suggested, without any detail, how the complaint might be amended if leave were granted. No proposed written amended pleading was offered. Nor were any clear or specific factual amendments outlined for the court at the hearing. As best the court could discern from the brief oral request, the suggested amendments did not include facts or theories that would potentially result in a different outcome. . . . Considering the delay here, first, the court notes the complaint in this matter was filed on August 13, 2019, approximately 20 months ago. Since that time, several trial dates have been set and continued. Two previous summary judgment motions have been heard and decided, both of which were centered on the same set of facts underlying the present motion. No explanation was offered at the time of the hearing as to the reason for any delay or lack of diligence in seeking amendment, other than presumably to sidestep the current summary judgment motion. In those types of circumstances, the court does not abuse its discretion in denying leave to amend. For example, in *Huff*, three days before the scheduled hearing on the defendant's summary judgment motion, the plaintiff requested an order shortening time to bring a motion to amend his complaint to add a new claim and to continue the summary judgment hearing. *Huff* concluded the trial court did not abuse its discretion in denying the plaintiff's request, noting plaintiff gave no explanation for the delay in seeking to amend. The court further recognized that based on the undisputed facts presented, no liability would lie under the new claim. [Citation.] That would be the case here as well. For all of these reasons, on balance, the court cannot find there is a sufficient basis to permit leave. The request for leave to amend is denied." (Citing *Huff v. Wilkins* (2006) 138 Cal.App.4th 732.)

## B

*Plaintiff Provides No Basis For Finding An Abuse Of Discretion*

Plaintiff asserts the trial court abused its discretion in denying plaintiff's request for leave to amend because plaintiff's "need" to amend the complaint "arose only because the trial court had not given the [c]omplaint the liberal construction in [plaintiff's] favor required by California law, and because the court focused on a single allegation of the negligence claim, while disregarding its context and other allegations in the negligence claim . . . that Defendants breached their duty to inform [plaintiff] his policy had been cancelled, not merely before the date of the fire, but promptly, i.e., in 'sufficient time' before the fire for him to remedy the problem." Attributing plaintiff's "need for leave to amend" to the trial court's purported error in failing to interpret the complaint liberally does not constitute a basis for finding the trial court abused its discretion in denying the motion for leave to amend. (*Miles v. City of Los Angeles* (2020) 56 Cal.App.5th 728, 739 [denial of motion for leave to amend complaint reviewed for abuse of discretion].) In any event, we have already rejected plaintiff's assertion of trial court error in that regard *ante*. We thus affirm the denial of plaintiff's motion for leave to amend the complaint.

## DISPOSITION

The judgment is affirmed.  Defendants shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1)-(2).)


/s/_____
Robie, Acting P. J.


We concur:


/s/_____
Renner, J.


/s/_____
Earl, J.

17