Filed 8/17/22  Valley Honey v. East Bay Municipal Utility Dist. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(San Joaquin)

----

| | |
|---|---|
| VALLEY HONEY, INC., et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>EAST BAY MUNICIPAL UTILITY DISTRICT,<br><br>Defendant and Respondent. | C093454<br><br>(Super. Ct. No. STKCVUOT201800000071) |

In any negligence suit, a plaintiff must demonstrate " 'a legal duty to use due care, a breach of such legal duty, and [that] the breach [is] the proximate or legal cause of the resulting injury.' " (*Beacon Residential Community Assn. v. Skidmore, Owings & Merrill LLP* (2014) 59 Cal.4th 568, 573.)  In this case, plaintiffs Valley Honey, Inc. and Christobal Espinosa (collectively plaintiffs) sued defendant East Bay Municipal Utility District (district) for general negligence after plaintiffs' property (several beehives) located along or on the banks of a river on others' lands was destroyed when the district increased water releases from Camanche Dam (the dam).  Plaintiffs alleged the district

1

owed them a duty of care to provide prior notification of its decision to increase water releases from the dam. The trial court granted summary judgment in favor of the district on the element of duty and dismissed plaintiffs' suit.

The primary question on appeal is whether the district, the operator of the dam, owed plaintiffs a duty of notification *prior* to increasing water releases that caused damage to plaintiffs' property downstream. We conclude the answer is no. We further find no merit in plaintiffs' remaining evidentiary and judicial notice arguments or in their contention the trial court erred in refusing to grant a continuance pursuant to Code of Civil Procedure section 437c, subdivision (h). We thus affirm the judgment in favor of the district.

FACTUAL AND PROCEDURAL BACKGROUND[1]

In January 2017, plaintiffs stored beehives near or on the banks of the Mokelumne River on four private properties downstream from the dam. Plaintiffs did not own the properties upon which they stored the beehives, nor did they pay the landowners rent. Plaintiffs, however, occasionally gave the landowners honey. Plaintiffs had oral agreements with the landowners, which included that the landowners would relay to plaintiffs any notice the landowners received regarding flooding or other water releases from the dam. Plaintiffs did not purchase insurance for their beehives.

The district operates the dam, which regulates flows in the lower Mokelumne River basin and lower San Joaquin River by controlling releases to reduce flood impacts. The district uses three methods to notify the public of water releases: (1) the district

---

[1] Although plaintiffs disputed some of the facts set forth herein, the trial court sustained the district's objections to the evidence upon which plaintiffs relied (as discussed in greater detail and affirmed in part II of the Discussion) and overruled plaintiffs' objections to the district's evidence. Plaintiffs' further responses to the district's statement of undisputed material facts failed to raise any material dispute as to the facts set forth in this opinion. We thus consider those facts undisputed.

provides notice on its public website; (2) a horn is sounded at the dam; and (3) when a release exceeds 1,000 cubic feet per second (cfs), an automated telephone alert is sent to various agencies and individuals who have opted in to receive such notifications.[2] Public notification of a release of more than 1,000 cfs occurs after the district has coordinated the proposed water release with the United States Army Corps of Engineers, San Joaquin County Sheriff's Office, Woodbridge Irrigation District, and the district's internal work units and dam operators. "Because weather forecasts can fluctuate day to day, [the district] confirms the forecast is stable before putting together the release plan and notifying the public." The district does this "to avoid false release notifications and loss of credibility with the public."

"On January 3, 2017, there was a significant change in the weather forecast for the San Joaquin/Mokelumne River area, as the National Weather Forecast called for atmospheric river conditions, including a warm rainfall event similar to the Pineapple Express storm that caused significant runoff in 1997." "The forecast projected 12-14 inches of precipitation within the upcoming two-week period, while the historical average 14-day forecast was 4 inches of precipitation. Precipitation in the Mokelumne River basin ultimately was 360% of the average for the month of January."

At 1:19 p.m. on January 4, 2017, the district made the decision to increase the water release from the dam. The district increased the release from 1460 cfs to 2,200 cfs at 5:00 p.m., and then to 3,000 cfs at 7:00 p.m. On the same day, the timing of which is unknown, the district submitted an automated telephone notification to its vendor for dissemination to those agencies and individuals who had opted in for such notifications.[3]

---

[2] Anyone may opt in for telephone notifications.

[3] Plaintiffs did not include the exhibits attached to Sean Todaro's declaration in the record on appeal. We note, however, plaintiffs stated the notification was made at the same time as the first release, i.e., at 5:00 p.m.

The district also at some point posted a notification on its website and sounded the horn at the dam.

On January 5, 2017, the district increased the release to 4,000 cfs at 2:00 p.m. and then to 5,000 cfs at 4:00 p.m. At 12:42 p.m. that day, the district either submitted an automated telephone notification to its vendor for dissemination, or such telephone notifications were made to the agencies and individuals on the opt-in list.[4] The district also at some point posted a notification on its website and sounded the horn at the dam.

Plaintiffs filed a general negligence action against the district, claiming their beehives were destroyed following the foregoing water release increases. Plaintiffs alleged the district "chose to increase the water releases from the [dam] without any prior notification" and "but for the decision to not provide prior notification of an increased release, plaintiffs [*sic*] property and business would not have been harmed as plaintiffs would have been able to move the property to a different location." (Capitalization omitted.) It is undisputed plaintiffs were unaware of the district's automated telephone notification system and relied on the oral agreements with the landowners for notifications regarding water releases or flooding.

The district filed a motion for summary judgment or, in the alternative, summary adjudication (the motion), arguing, in pertinent part to this appeal, it owed plaintiffs no duty of prior notification when it increased the water releases from the dam. Plaintiffs opposed the motion.

The trial court initially issued a tentative ruling denying the motion. In that tentative ruling, the trial court principally found a duty because "more notice might have made a difference in this case, especially in light of Plaintiff's [*sic*] undisputed

---

**4**      The parties dispute whether the telephone calls were made at that time. We need not resolve the factual dispute because it is immaterial to the outcome of this appeal.

communications with [one of the landowners]" and the district failed to show "that imposing a duty of reasonable notice would place an 'impossible burden' on" the district.

After oral argument and reviewing the supplemental briefs filed by the parties, however, the trial court was persuaded the district "did not owe a duty to make reasonable efforts to give prompt notice of its decision to release water from [the dam] to all people who might have any personal property interest downstream." In the trial court's view, "[i]t was simply not foreseeable that [the plaintiffs] would be harmed in this scenario" and "[f]inding of such a duty would open up the proverbial floodgates of litigation to a never-ending universe of potential plaintiffs." The trial court thus granted the district's motion.

Plaintiffs appeal.

DISCUSSION

Plaintiffs argue: (1) the trial court erred in finding the district owed them no duty of care; (2) the trial court "effectively created a non-statutory immunity for dam operators" (capitalization omitted); (3) a material issue of fact exists as to whether prior notice was provided by the district; (4) the trial court erred in refusing to consider plaintiffs' judicially noticed documents; (5) the trial court erred in refusing to consider plaintiffs' evidence; and (6) the trial court erred in refusing to grant a continuance pursuant to Code of Civil Procedure section 437c, subdivision (h).

We first consider the issue of duty and because we find the district owed plaintiffs no duty of prior notification, we do not address plaintiffs' nonstatutory immunity and breach arguments. We next consider and reject plaintiffs' remaining arguments.

5

# I

## *Duty Of Care*

### A

#### *Summary Judgment Standard Of Review*

Summary judgment is properly granted when no triable issue exists as to any material fact and the moving party is entitled to judgment as a matter of law. (Code Civ. Proc., § 437c, subd. (c).) We review the grant of a motion for summary judgment de novo. (*Law Offices of Dixon R. Howell v. Valley* (2005) 129 Cal.App.4th 1076, 1092.) In that vein, we assume the role of the trial court by independently examining the record and evaluate the correctness of the trial court's ruling, not its rationale. (*Moore v. William Jessup University* (2015) 243 Cal.App.4th 427, 433.) In doing so, we scrutinize the parties' trial briefs and evidence to determine the existence of a triable issue of fact. (See *Martinez v. County of Los Angeles* (1996) 47 Cal.App.4th 334, 341.) "There is a triable issue of material fact if, and only if, the evidence would allow a reasonable trier of fact to find the underlying fact in favor of the party opposing the motion in accordance with the applicable standard of proof." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850.)

"A defendant . . . has met his or her burden of showing that a cause of action has no merit if the party has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to the cause of action. Once the defendant . . . has met that burden, the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to the cause of action or a defense thereto. The plaintiff . . . shall not rely upon the allegations or denials of [his or her] pleadings to show that a triable issue of material fact exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists as to the cause of action or a defense thereto." (Code Civ. Proc., § 437c, subd. (p)(2).) We "view the evidence in a light favorable to plaintiff as the losing party [citation], liberally construing [his or] her

6

evidentiary submission while strictly scrutinizing [the defendant's] own showing, and resolving any evidentiary doubts or ambiguities in plaintiff's favor."  (*Saelzler v. Advanced Group 400* (2001) 25 Cal.4th 763, 768.)

B

*The Standards For Analyzing The Existence Of A Duty*

" ' "[D]uty" is a question of whether the defendant is under any obligation for the benefit of the particular plaintiff; and in negligence cases, the duty is always the same, to conform to the legal standard of reasonable conduct in . . . light of the apparent risk. What the defendant must do, or must not do, is a question of the standard of conduct required to satisfy the duty.' "  (*Coffee v. McDonnell-Douglas Corp.* (1972) 8 Cal.3d 551, 559, fn. 8.)  "Unlike the elements of breach, causation, and injury, all of which are fact-specific issues for the trier of fact, the existence and scope of a duty are questions of law."  (*Staats v. Vintner's Golf Club, LLC* (2018) 25 Cal.App.5th 826, 832.)

"In California, the 'general rule' is that people owe a duty of care to avoid causing harm to others and that they are thus usually liable for injuries their negligence inflicts.  [Citation.]  Under Civil Code section 1714, subdivision (a), '[e]veryone is responsible . . . for an injury occasioned to another by his or her want of ordinary care or skill in the management of his or her property or person, except so far as the latter has, willfully or by want of ordinary care, brought the injury upon himself or herself.'  So at least in cases involving traditionally compensable forms of injury -- like physical harm to person or property -- we presume the defendant owed the plaintiff a duty of care and then ask whether the circumstances 'justify a departure' from that usual presumption.  [Citation.] In *Rowland v. Christian* (1968) 69 Cal.2d 108 . . . (*Rowland*), [our Supreme Court] identified several factors that, among others, may bear on that question:  (1) 'the foreseeability of harm to the plaintiff,' (2) 'the degree of certainty that the plaintiff suffered injury,' (3) 'the closeness of the connection between the defendant's conduct and the injury suffered,' (4) 'the moral blame attached to the defendant's conduct,'

7

(5) 'the policy of preventing future harm,' (6) 'the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach,' and (7) 'the availability, cost, and prevalence of insurance for the risk involved.' [Citation.] At core, though, the inquiry hinges not on mere rote application of these separate so-called *Rowland* factors, but instead on a comprehensive look at the ' " ' "the sum total" ' " ' of the policy considerations at play in the context before us." (*Southern California Gas Leak Cases* (2019) 7 Cal.5th 391, 398-399.)

Our Supreme Court has explained that "[t]he *Rowland* factors fall into two categories. Three factors -- foreseeability, certainty, and the connection between the plaintiff and the defendant -- address the foreseeability of the relevant injury, while the other four -- moral blame, preventing future harm, burden, and availability of insurance -- take into account public policy concerns that might support excluding certain kinds of plaintiffs or injuries from relief." (*Kesner v. Superior Court* (2016) 1 Cal.5th 1132, 1145 (*Kesner*).)

"Because a judicial decision on the issue of duty entails line drawing based on policy considerations, 'the *Rowland* factors are evaluated at a relatively broad level of factual generality. . . . [¶] In applying the . . . *Rowland* factors, . . . we have asked not whether they support an exception to the general duty of reasonable care on the facts of the particular case before us, but whether carving out an entire category of cases from that general duty rule is justified by clear considerations of policy. . . . [¶] By making exceptions to Civil Code section 1714's general duty of ordinary care only when foreseeability and policy considerations justify a categorical no-duty rule, we preserve the crucial distinction between a determination that the defendant owed the plaintiff no duty of ordinary care, which is for the court to make, and a determination that the defendant did not breach the duty of ordinary care, which in a jury trial is for the *jury* to make.' " (*Kesner*, *supra*, 1 Cal.5th at pp. 1143-1144.)

## C

### *The Duty Under Consideration*

We first clarify the duty under consideration because plaintiffs' theory has been somewhat vacillating and confusing.

The district asserts plaintiffs admitted the district owed no duty directly to them because plaintiffs' theory was that the district owed a duty of prior notification to the landowners, and the landowners in turn owed plaintiffs a duty of relaying such information. The trial court rejected this argument, noting plaintiffs denied the request for admission that the district owed no duty to plaintiffs. Following the denial, however, plaintiffs stated the district "had a DUTY to notify each landowner who [*sic*] regarding the releases of water. The landowners in turn had a duty to notify Plaintiff[s] of the releases of water. [The district] breached this duty and caused Plaintiff[s] damages." (Underlining omitted.) While plaintiffs' explanation following the denial of the request for admission appears to support the district's argument, the trial court analyzed plaintiffs' new theory in opposition to the motion that the district owed a duty of prior notification to the public, including plaintiffs. The district has asserted no claim of error with associated reasoning or argument in that regard, and we thus analyze the asserted duty as framed in plaintiffs' opposition to the motion and considered and decided by the trial court. (*United Grand Corp. v. Malibu Hillbillies, LLC* (2019) 36 Cal.App.5th 142, 153 [we disregard statements or arguments failing to disclose the reasoning by which we are asked to reach the conclusions asserted].)

In that regard, plaintiffs asserted the district owed them a duty "to adequately provide notice prior to increasing releases" from the dam. In addressing the asserted duty, plaintiffs argued the United States Army Corps of Engineers required the district to take " 'reasonable steps to inform the public of significant changes in flood control releases' " and the district's guidelines provided the district "was to make 'automated

telephone notifications at least one day before release changes.' "[5] Plaintiffs maintained they had "alleged that [the district] was negligent by ignoring the policies and guidelines established by the Army Corp. [*sic*] of Engineers and [the district] itself which identified that prior notice, of at least a day, should be provided to the public." In plaintiffs' view, "[c]learly, the [district's] guidelines were established because they [*sic*] believe (and common sense requires) good public policy is to notify the public prior to a release so that they have sufficient time to protect themselves and their property. Enforcing this policy consideration would cause no additional burden on [the district] because this burden was already supposed to be followed and the risk of harm is obvious and certain." Plaintiffs further reasoned the district's "already established policy of providing prior notice, if followed, would prevent future harm. However, [the district's] decision not to follow their own policies should expose [the district] to moral blame. Finally, the community as a whole would benefit from [the district] following [its] own guidelines and providing prior notice of increased releases because the public would be able to better prepare themselves and insulate themselves from the possible negative impact, including flooding." At oral argument, plaintiffs added it was unreasonable to increase the release at 5:00 p.m. on January 4, 2017, and "then start[] notifications on [the same day]."

Based on the duty argument raised in plaintiffs' opposition to the motion and considered and decided by the trial court, we consider whether the district owed plaintiffs a duty of notification before increasing water releases from the dam. (See *Martinez v. County of Los Angeles*, *supra*, 47 Cal.App.4th at p. 341 [we scrutinize the parties' briefs and evidence to determine if summary judgment was appropriate].)

---

[5] We note the purported district guideline quoted by plaintiffs was contained in an exhibit attached to the declaration of Dustin J. Dyer that was excluded by the trial court. We affirm that ruling in part II of the Discussion *post*.

D

*The District Did Not Owe Plaintiffs A Duty Of Prior Notification*

Plaintiffs assert a triable issue of fact exists as to each *Rowland* factor and the trial court erred in viewing the district's evidence more favorably than plaintiffs' evidence. Plaintiffs further assert the trial court blurred the analysis as to whether the district owed them a duty and whether the district fulfilled its duty to them. In that regard, plaintiffs believe the trial court "failed to acknowledge that steps taken in fulfillment of a duty is evidence of a duty, not evidence of no duty." As already explained, we evaluate the correctness of the trial court's ruling, not its rationale.[6] (*Moore v. William Jessup University*, *supra*, 243 Cal.App.4th at p. 433.) We apply the *Rowland* factors de novo to determine whether the trial court erred in finding the district owed plaintiffs no duty of care.

*Foreseeability of Harm*: " '[A]s to foreseeability, . . . the court's task in determining duty "is not to decide whether a *particular* plaintiff's injury was reasonably foreseeable in light of a *particular* defendant's conduct, but rather to evaluate more generally whether the category of negligent conduct at issue is sufficiently likely to result in the kind of harm experienced that liability may appropriately be imposed . . . ." ' [Citations.] For purposes of duty analysis, ' "foreseeability is not to be measured by what is more probable than not, but includes whatever is likely enough in the setting of modern life that a reasonably thoughtful [person] would take account of it in guiding practical conduct." . . . [I]t is settled that what is required to be foreseeable is the general character of the event or harm -- e.g., being struck by a car while standing in a phone booth -- not its precise nature or manner of occurrence.' " (*Kesner*, *supra*, 1 Cal.5th at p. 1145.)

---

[6]     We thus also do not address plaintiffs' argument that the trial court's reliance on the *Southern California Gas Leak Cases* was misplaced. (Citing *Southern California Gas Leak Cases*, *supra*, 7 Cal.5th at p. 391.)

11

Plaintiffs argue the harm was foreseeable because: (1) two federal regulations require the district to give public notice when significant problems are anticipated or experienced in carrying out the approved water control plan or if there may be a risk to life or property; and (2) the district's "own guidelines, statements and claimed actions acknowledge that increased releases would negatively impact people and property below the dam." The district asserts "[t]he trial court properly found that it was not foreseeable [plaintiffs] would suffer harm to personal property because they could have taken advantage of any of the notification methods offered by [the district], including opting into the phone notification system at any time, checking [the district's] public website for release updates, [or] listening for the horn."

As our Supreme Court explained in *Kesner*, the foreseeability of the harm is tied to the defendant's alleged negligent conduct, which here is a dam operator's alleged failure to provide notification to plaintiffs before increasing water releases that damaged plaintiffs' personal property downstream. (*Kesner*, *supra*, 1 Cal.5th at p. 1145.) In our view, there can be no question it is foreseeable the alleged negligent conduct could lead to property damage downstream from a dam because individuals might not have sufficient time to protect their property.

*Degree Of Certainty Plaintiffs Suffered Injury*: "[T]he degree of certainty that the plaintiff suffered injury, 'has been noted primarily, if not exclusively, when the only claimed injury is an intangible harm such as emotional distress.' [Citation.] Courts have occasionally included under this factor concerns about the existence of a remedy." (*Kesner*, *supra*, 1 Cal.5th at p. 1148.) Plaintiffs allege, and there appears to be no factual dispute, that their beehives were destroyed by the increased water releases; plaintiffs' damage to personal property is generally considered compensable under the law.

*Closeness Of Connection Between The Alleged Negligent Conduct And Plaintiffs' Injury*: " ' "[T]he closeness of the connection between the defendant's conduct and the injury suffered[,]" [citation] is strongly related to the question of foreseeability itself.' "

(*Kesner*, *supra*, 1 Cal.5th at p. 1148.)  Plaintiffs argue there is no dispute regarding the connection between the district's conduct and the injury suffered because their beehives were lost due to the flooding.  The district argues "the connection between [its] conduct and the alleged damage is attenuated because [plaintiffs] maintain that [the district] had a duty to notify the *landowners*, who in turn had a duty to notify him."  As already explained *ante*, it appears plaintiffs changed their theory as to the duty asserted.

While we disagree with the district's argument because it does not actually counter plaintiffs' theory, we do agree that, although the closeness of the connection of the alleged negligence and injury is closely related to foreseeability, the connection in this case is somewhat attenuated because plaintiffs admittedly relied only on the landowners to relay any notifications to them, and the district had no reason or basis for knowing of plaintiffs' reliance.  Even if the district had given earlier telephone notifications to any landowners who had oral agreements with plaintiffs, or even if such landowners had learned of the increased water releases from the district's website earlier, plaintiffs' ability to avoid injury to their beehives would have depended on the conduct of the third-party landowners.  Plaintiffs' reliance on third parties' actions in that sense attenuates the closeness of the connection between the alleged negligence and plaintiffs' injury.

*Moral Blame*:  The question of moral blame pertains to the defendant's conduct and "can be difficult to assess in the absence of a factual record."  (*Kesner*, *supra*, 1 Cal.5th at p. 1151.)  Plaintiffs argue "moral blame is not exclusive to intentional or bad faith acts" and includes the failure to take reasonable ameliorative steps to avert the foreseeable harm.  (Citing *Vasilenko v. Grace Family Church* (2017) 3 Cal.5th 1077.)  In plaintiffs' view, the district could have taken various steps to avert the foreseeable harm, such as providing "newspaper ads, radio ads, mailings or signs which would identify to the public every winter of the availability to join [the district's] telephone notification program."  They further argue "signs could have been posted along the riverbanks identifying the water release risks and/or availability to join a telephone notification

13

system" and the district could "place warning horns on each flow meter in order to provide better notice to all portions of the 95-mile-long river rather than just on the dam." The district does not address plaintiffs' argument and merely argues "there is no evidence [the district] acted intentionally or in bad faith."

First, it appears plaintiffs are arguing for a duty to notify the public of the *existence of* the telephone notification system, which is not at issue here. Second, plaintiffs did not raise this argument in the trial court. They instead argued the district's "already established policy of providing prior notice, if followed, would prevent future harm" and the district's "decision not to follow their own policies should expose [the district] to moral blame." (See *Martinez v. County of Los Angeles*, *supra*, 47 Cal.App.4th at p. 341 [we scrutinize the parties' briefs and evidence to determine if summary judgment was appropriate].) We thus do not address the newly asserted ameliorative steps noted in plaintiffs' brief on appeal.

The record before us does not show the district's conduct to be particularly blameworthy. The district's alleged existing policy/guideline noted by plaintiffs in their opposition to the motion was: "[i]f possible, automated telephone notifications are made at least one day before release changes" greater than 1,000 cfs from the dam. (Bolding omitted.) The trial court excluded the document upon which plaintiffs relied, which was contained in exhibit 2 to the declaration of Dustin J. Dyer. We uphold that ruling in part II of the Discussion *post*. Further, even if the document was not excluded, we do not believe it demonstrates the district had a policy of providing prior notification. The sentence relied upon starts with the words "[i]f possible," meaning any policy of providing automated telephone notifications at least one day before increasing water releases is not absolute but rather depends on the circumstances.

There can be no doubt the district's decisions regarding the volume of water to be released from the dam and the timing of such releases require complex scientific analyses and determinations. As the district explained, it must make decisions and notifications

14

regarding water releases based on verified data to ensure the district does not provide false notifications to the public, which in turn could impact the public's future actions in response to such notifications in emergencies. There is no admissible evidence in the record indicating the district knew of the timing and volume of the water releases at least a day before the releases were made or prior to the dates and times when the decisions were made. Although the district exercises greater control over the risk of downstream flooding, the moral blame as to the asserted lack of prior notification does not point toward imposition of a duty.

*The Policy Of Preventing Future Harm*: " 'The overall policy of preventing future harm is ordinarily served, in tort law, by imposing the costs of negligent conduct upon those responsible.' [Citation.] In general, internalizing the cost of injuries caused by a particular behavior will induce changes in that behavior to make it safer. That consideration may be 'outweighed, for a category of negligent conduct, by laws or mores indicating approval of the conduct or by the undesirable consequences of allowing potential liability.' " (*Kesner*, *supra*, 1 Cal.5th at p. 1150.)

Plaintiff asserts "[t]he policy consideration in play is whether a dam operator should be required to notify the public prior to releasing water." The district argues "[a] duty of prior notification would help one individual but would have had the opposite result for thousands of people who live and work along the Mokelumne River who would have been subjected to flooding if [the district] had to delay a release in order to comply with a prior notice requirement." The district believes "[a] duty of prior notice would require [it] to go door to door in an effort to locate people storing transient goods or even trespassers." The district posits that "[r]equiring prior notice in every case, regardless of other factors that go into [the district's] decision when to release, could lead to severe flooding -- which is the very thing the increase in releases is supposed to prevent."

We recognize that imposing a duty to provide notifications *before* increasing water releases would make it safer for individuals and property downstream from the dam. But

15

it may also create undesirable consequences by imposing such liability. Plaintiffs essentially argued for notifications to be made at least one day in advance of increasing the releases. By tying the district's hands and imposing a duty of prior notification as asserted by plaintiffs, we would undermine the district's function to use its scientific skill and experience to manage the dam and prevent or minimize more severe flooding that might otherwise occur. Allowing the district flexibility in making such decisions based on the circumstances presented seems prudent and, as already mentioned, there is no admissible evidence in the record indicating the district knew of the timing and volume of the water releases at least a day before the releases were made or prior to the dates and times when the decisions to increase the water releases were made.

Under these circumstances, we conclude the undesirable consequences of imposing liability cuts against finding a duty of prior notification. (See *Knight v. Jewett* (1992) 3 Cal.4th 296, 315-320 [danger of chilling participation in active sports justified categorical exception to duty of ordinary care for participants' careless acts toward coparticipants]; *Parsons v. Crown Disposal Co.* (1997) 15 Cal.4th 456, 474-475 [societal burden of imposing a duty to guard against fright to a horse when properly using a vehicle or machine justifies not recognizing such a duty]; *Castaneda v. Olsher* (2007) 41 Cal.4th 1205, 1216-1217 [declining to recognize a landlord's duty not to rent to gang members in light of the burdens that recognizing such a duty would create].)

*The Extent Of The Burden To Defendant And Consequences To The Community Of Imposing The Duty*: "Apart from foreseeability, the chief factor in determining whether deliberate conduct may give rise to negligence liability is ' "the social value of the interest which the actor is seeking to advance." ' [Citations.] A duty of care will not be held to exist even as to foreseeable injuries, in other words, where the social utility of the activity concerned is so great, and avoidance of the injuries so burdensome to society, as to outweigh the compensatory and cost-internalization values of negligence liability." (*Merrill v. Navegar, Inc.* (2001) 26 Cal.4th 465, 502.)

16

Plaintiffs argue the district's "own guidelines, manuals and admissions identify the need for proper prior notice to the public" and "[i]f such action in fact would cause an impossible burden, then [the district] would not have included it as part of its responsibilities." Plaintiffs also mention a concern "regarding the sufficiency of [the district's] notification system" and believe a material dispute of fact exists as to whether the district provided notifications to the public. Plaintiffs further again assert the district could have done several things to notify the public of the existence of the district's telephone notification system and could have placed flow meters throughout the Mokelumne River.

The district argues "[c]reating a duty of prior notification to people who may store personal property downstream and on the edge of the river is an impossible burden" because it "cannot notify everyone who might have an interest without first identifying the universe of people who must be notified."

There can be no question that flood control operations are of social value and allowing an agency tasked with the particular skill and experience to manage such operations based on given circumstances has social utility. As already discussed, imposing a duty of notification prior to increasing water releases may burden society in the sense that more severe flooding could occur.

*The Availability, Cost, And Prevalence Of Insurance For The Risk Involved*: "[T]the tort system contemplates that the cost of an injury, instead of amounting to a 'needless' and 'overwhelming misfortune to the person injured,' will instead 'be insured by the [defendant] and distributed among the public as a cost of doing business.' [Citation.] Such allocation of costs serves to ensure that those 'best situated' to prevent such injuries are incentivized to do so." (*Kesner*, *supra*, 1 Cal.5th at p. 1153.) Where, however, as here, the parties have failed to provide sufficient information to settle the question of insurance one way or the other, we conclude the insurance factor weighs

17

neither for nor against imposing a duty.  (*Vasilenko v. Grace Family Church*, *supra*, 3 Cal.5th at p. 1091.)

In balancing the foregoing factors, we conclude the district owed plaintiffs no duty of prior notification before it increased the water releases from the dam.

II

*Plaintiffs Have Not Shown The Trial Court Erred*

*In Failing To Consider Exhibit 2 Of The Dyer Declaration*

Plaintiffs argue, although the trial court's first tentative ruling on October 6, 2020, sustained the district's objections to several pieces of plaintiffs' evidence, "in particular objections based on lack of authentication," the trial court erred in failing to consider the evidence introduced "by way of the Declaration of Dustin J. Dyer," because the trial court's January 4, 2021, order omitted any language excluding such evidence.  Plaintiffs are mistaken.

It is clear from the colloquy between plaintiffs' counsel and the court on October 7, 2020, that plaintiffs' counsel understood the trial court had sustained the district's objections as to lack of authentication.  Indeed, in response to the trial court's statement that it did not "want new evidence submitted" with the supplemental briefing on the duty issue, plaintiffs' counsel asked for "the opportunity to authenticate the evidence to show that there is a policy" by taking "the person's deposition and present[ing] that evidence."  Plaintiffs' counsel made this request because the trial court had "just granted [the district's] objections related to it."  The trial court responded it was "not allowing additional depositions and additional evidence and et cetera.  This is not a redo; it's not a continuance of this.  It's just a continued hearing, not continuance of the motion."

During the December 1, 2020, hearing, plaintiffs' counsel again discussed the trial court's prior evidentiary ruling.  Plaintiffs' counsel requested a continuance pursuant to Code of Civil Procedure section 437c, subdivision (h), explaining:  "if the court recalls,

18

much of the denial of evidence is done simply because a lack of authentication, which can easily be cured had plaintiff[s] had the ability to take [certain] depositions." Thus, in plaintiffs' counsel's view, "the court erred in granting the tentative motion."

Based on the foregoing, the trial court and the parties understood the trial court had already ruled on the evidentiary objections discussed in the October 6, 2020, tentative ruling when the trial court issued the January 4, 2021, order granting the district's motion. Plaintiffs cite no case authority, nor are we aware of any, requiring the trial court to issue a "signed order" when it rules on evidentiary objections. Plaintiffs further do not challenge the trial court's lack of authentication ruling as to the exhibits to the Dyer declaration. We thus find no basis for reversing the trial court's evidentiary ruling.

### III

*Plaintiffs Have Not Shown The Trial Court Erred In Denying Judicial Notice*

Under the heading "the trial court erred in refusing to consider appellants [*sic*] judicially noticed documents" (capitalization and bolding omitted), plaintiffs argue: (1) they "objected to [the district's] reply declaration for Mr. Todaro" but the trial court "failed to rule on these objections and the declarations remained as evidence for the motion"; (2) "[b]y allowing [the district] to provide evidence on two occasions while denying [plaintiffs] the same opportunity, the Trial Court created an unlevel and improper playing field"; (3) "in denying [plaintiffs'] request for judicial notice, the Trial Court characterized the judicially noticed documents as evidence which violated the Trial Court's October 7, 2020 order"; and (4) the trial court "acted improperly in treating the judicially noticed documents as evidence rather than legal authority." Nothing in these assertions pertain to whether the trial court erred in declining to consider documents subject to judicial notice.

Plaintiffs fail to explain with citations to the record and authority why or how the documents were appropriate for judicial notice. Further, although they state the trial

19

court's ruling constituted "prejudicial error," plaintiffs fail to provide any argument as to why prejudicial error occurred. We accordingly find no basis for reversing the trial court's judicial notice ruling.

IV

*The Trial Court Did Not Abuse Its Discretion By Denying The Motion To Continue*

Plaintiffs contend the trial court abused its discretion in declining their request for a continuance because, despite plaintiffs' failure to adhere to the requirements in Code of Civil Procedure section 437c, subdivision (h), the trial court should have undertaken a good cause analysis. (Citing *Lerma v. County of Orange* (2004) 120 Cal.App.4th 709.) Specifically, plaintiffs argue the trial court should have granted the continuance to allow them an opportunity to authenticate exhibit 2 attached to the Dyer declaration, discussed *ante*.

At the hearing in the trial court, plaintiffs argued that, if the trial court was inclined to grant the motion, it could nonetheless deny the motion and grant a continuance pursuant to Code of Civil Procedure section 437c, subdivision (h). The trial court denied the request, stating plaintiffs had to submit an affidavit identifying "the facts that counsel is seeking to uncover[,] why those specific facts that they are trying to uncover are essential to defeating the motion, and why it is [plaintiffs] need more time, and didn't already do this." The trial court explained plaintiffs failed to meet the statutory requirements and it would not stretch the "the circumstances here to fit the requirements of [Code of Civil Procedure section] 437."

Even assuming the trial court erred in failing to grant the continuance, as plaintiffs assert, the problem with plaintiffs' argument is that they have not shown (or even attempted to show) prejudice. (Cal. Const., art. VI, § 13 [no reversal unless "error complained of has resulted in a miscarriage of justice"].) Plaintiffs do not explain how the authentication of the documents in exhibit 2 of the Dyer declaration would have resulted in a more favorable outcome. We do not make arguments for the parties and

20

may disregard conclusory arguments failing to disclose the reasoning by which plaintiffs reached the conclusion they ask us to adopt.  (*United Grand Corp. v. Malibu Hillbillies, LLC*, *supra*, 36 Cal.App.5th at p. 153.)

## DISPOSITION

The judgment is affirmed.  The district is awarded its costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1), (2).)


/s/
Robie, Acting P. J.


We concur:


/s/
Duarte, J.


/s/
Renner, J.

21